IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| Ray Arp, | |
| *On behalf of himself and those similarly situated*, | Case No. 3:18-cv-119 |
| Plaintiff, | Judge |
| v. | Magistrate Judge |
| Hohla & Wyss Enterprises, LLC; Hohla & Wyss Cooperatives, LLC; Hohla & Wyss Establishments, LLC; Hohla & Wyss Merchants, LLC; Hohla & Wyss Outfits, LLC; Hohla & Wyss Shops, LLC; Hohla & Wyss Ventures, LLC; Hohla & Wyss Partnerships, LLC; Jon Wyss; Erika Wyss; and Brad Hohla; | Jury Demand Endorsed Hereon |
| Defendants. | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

1.    Ray Arp, on behalf of himself and all similarly-situated individuals, brings this action against Hohla & Wyss Enterprises, LLC; Hohla & Wyss Cooperatives, LLC; Hohla & Wyss Establishments, LLC; Hohla & Wyss Merchants, LLC; Hohla & Wyss Outfits, LLC; Hohla & Wyss Shops, LLC; Hohla & Wyss Ventures, LLC; Hohla & Wyss Partnerships, LLC; Jon Wyss; Erika Wyss; and Brad Hohla (collectively, "Defendants" or "Jimmy John's"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum and overtime wages as

required by the Fair Labor Standards Act ("FLSA"), the Ohio Constitution, Article II, Section 34a ("Section 34a"), O.R.C. § 4113.15 (Ohio's "Prompt Pay Act"), the Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01, *et seq*. ("OMFWSA"), and O.R.C. § 2307.60.

2.      Defendants operate at least five Jimmy John's stores in the Dayton, Ohio area.

3.      Plaintiff worked for Defendants primarily at their Beavercreek store near Fairfield Commons Mall, but he also worked at all other of Defendants' Jimmy John's stores as well.

4.      Defendants have maintained a policy and practice of failing to pay proper minimum wage and overtime wages to Plaintiff and other delivery drivers at their five Jimmy John's stores.

5.      Plaintiff and other delivery drivers were paid minimum wage minus a tip credit (i.e., less than regular minimum wage) for all hours he worked at Jimmy John's, including hours worked inside the store in a non-tipped capacity.

6.      Plaintiff and other delivery drivers were paid on paychecks from multiple of Defendants' legal entities during the same pay period so that Defendants could avoid paying overtime.

7.      Plaintiff and other delivery drivers were not reimbursed at all for their delivery-related expenses until sometime in approximately early 2017.

8.      Starting in approximately early 2017, Plaintiff and other delivery drivers were reimbursed on a per-mile basis that was less than the IRS standard business mileage rate not adequate to cover the expenses they incurred while completing deliveries.

9.      By virtue of these unreimbursed and under-reimbursed expenses, Plaintiff and other delivery drivers have "kicked back" a portion of their wages to Defendants.

10.　Plaintiff brings this action on behalf of himself and similarly situated current and former delivery drivers at Defendants' Jimmy John's stores who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

11.　Plaintiff also brings this action on behalf of himself and similarly situated current and former delivery drivers at Defendants' Jimmy John's stores in Ohio, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of Section 34a, the OMFWSA, the Prompt Pay Act, and O.R.C. § 2307.60.

## JURISDICTION AND VENUE

12.　This Court has jurisdiction over Plaintiff's FLSA claims. 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

13.　This Court has supplemental jurisdiction over Plaintiff's Ohio law claims. 28 U.S.C. § 1367.

14.　Venue in this Court is proper because the parties reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district. 28 U.S.C. § 1391(b).

## PARTIES

**Plaintiff**

**Ray Arp**

15.　Plaintiff Ray Arp resides in Dayton, Ohio.

16.　Plaintiff worked for Defendants within the boundaries of Southern District of Ohio.

17.　Plaintiff was an "employee" of Defendants as defined in the FLSA, Section 34a, and OMFWSA.

3

18.    Plaintiff has given written consent to join this action.

**<u>Defendants</u>**

19.    Defendants Jon Wyss, Erika Wyss, and Brad Hohla own and operate at least five Jimmy John's stores in the Dayton, Ohio area under various LLCs as a single employer or single enterprise.

20.    The LLCs that own and operate Defendants' Jimmy John's stores are Hohla & Wyss Enterprises, LLC; Hohla & Wyss Cooperatives, LLC; Hohla & Wyss Establishments, LLC; Hohla & Wyss Merchants, LLC; Hohla & Wyss Outfits, LLC; Hohla & Wyss Shops, LLC; Hohla & Wyss Ventures, LLC; and Hohla & Wyss Partnerships, LLC (collectively, the "Defendant entities").

21.    Defendants own and operate the Jimmy John's located in Beavercreek, Springboro, Centerville, Sugarcreek Township, and Miami Township.

22.    All of Defendants' LLCs are registered at the same address: 3417 Myna Lane, Miamisburg, Ohio 45342.

23.    Defendants have interrelated operations, common management, centralized control of labor relations, and common ownership.

24.    Alternatively, Defendants constitute joint employers as they co-determine matters governing essential terms and conditions of employment, share ability to hire, fire and discipline employees, share ability to affect compensation and benefits, and share authority to direct and supervise employees' performance.

25.    Alternatively, Defendants constitute joint employers because their delivery drivers' work simultaneously benefits all Defendants and each Defendant acts directly or indirectly in the

interest of all other Defendants in relation to the delivery drivers and / or Defendants are not completely disassociated with respect to the employment of the delivery drivers and may be deemed to share control of the delivery drivers, directly or indirectly, by reason of the fact that all Defendants are under common control with the employer.

26.     Defendants permitted employees to transfer to or be shared by and between their five Jimmy John's stores.

27.     Defendants paid employees on paychecks from multiple of the Defendant entities for work completed during the same pay period.

**Hohla & Wyss Enterprises, LLC**

28.     Defendant Hohla & Wyss Enterprises, LLC is a limited liability company registered to do business in Ohio.

29.     Jon Wyss, Erika Wyss, and Brad Hohla are the owners of Hohla & Wyss Enterprises, LLC.

30.     Hohla & Wyss Enterprises, LLC has substantial control over the working conditions of Defendants' delivery drivers, and over the unlawful policies and practices alleged herein.

31.     Hohla & Wyss Enterprises, LLC has direct or indirect control of the terms and conditions of the work of Defendants' delivery drivers.

32.     At all relevant times, Hohla & Wyss Enterprises, LLC maintained control, oversight, and direction over the Defendants' delivery drivers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

5

33.     Hohla & Wyss Enterprises, LLC is an "employer" of Defendants' delivery drivers as that term is defined by the FLSA, the OMFWSA, and Section 34a.

34.     At all relevant times, Hohla & Wyss Enterprises, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

35.     Hohla & Wyss Enterprises, LLC's gross revenue exceeds $500,000 per year.

**Hohla & Wyss Cooperatives, LLC**

36.     Defendant Hohla & Wyss Cooperatives, LLC is a limited liability company registered to do business in Ohio.

37.     Jon Wyss, Erika Wyss, and Brad Hohla are the owners of Hohla & Wyss Cooperatives, LLC.

38.     Hohla & Wyss Cooperatives, LLC has substantial control over the working conditions of Defendants' delivery drivers, and over the unlawful policies and practices alleged herein.

39.     Hohla & Wyss Cooperatives, LLC has direct or indirect control of the terms and conditions of the work of Defendants' delivery drivers.

40.     At all relevant times, Hohla & Wyss Cooperatives, LLC maintained control, oversight, and direction over the Defendants' delivery drivers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

41.     Hohla & Wyss Cooperatives, LLC is an "employer" of Defendants' delivery drivers as that term is defined by the FLSA, the OMFWSA, and Section 34a.

6

42.     At all relevant times, Hohla & Wyss Cooperatives, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

43.     Hohla & Wyss Cooperatives, LLC's gross revenue exceeds $500,000 per year.

**Hohla & Wyss Establishments, LLC**

44.     Defendant Hohla & Wyss Establishments, LLC is a limited liability company registered to do business in Ohio.

45.     Jon Wyss, Erika Wyss, and Brad Hohla are the owners of Hohla & Wyss Establishments, LLC.

46.     Hohla & Wyss Establishments, LLC has substantial control over the working conditions of Defendants' delivery drivers, and over the unlawful policies and practices alleged herein.

47.     Hohla & Wyss Establishments, LLC has direct or indirect control of the terms and conditions of the work of Defendants' delivery drivers.

48.     At all relevant times, Hohla & Wyss Establishments, LLC maintained control, oversight, and direction over the Defendants' delivery drivers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

49.     Hohla & Wyss Establishments, LLC is an "employer" of Defendants' delivery drivers as that term is defined by the FLSA, the OMFWSA, and Section 34a.

7

50.     At all relevant times, Hohla & Wyss Establishments, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

51.     Hohla & Wyss Establishments, LLC's gross revenue exceeds $500,000 per year.

**Hohla & Wyss Merchants, LLC**

52.     Defendant Hohla & Wyss Merchants, LLC is a limited liability company registered to do business in Ohio.

53.     Jon Wyss, Erika Wyss, and Brad Hohla are the owners of Hohla & Wyss Merchants, LLC.

54.     Hohla & Wyss Merchants, LLC has substantial control over the working conditions of Defendants' delivery drivers, and over the unlawful policies and practices alleged herein.

55.     Hohla & Wyss Merchants, LLC has direct or indirect control of the terms and conditions of the work of Defendants' delivery drivers.

56.     At all relevant times, Hohla & Wyss Merchants, LLC maintained control, oversight, and direction over the Defendants' delivery drivers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

57.     Hohla & Wyss Merchants, LLC is an "employer" of Defendants' delivery driver as that term is defined by the FLSA, the OMFWSA, and Section 34a.

58.     At all relevant times, Hohla & Wyss Merchants, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

8

59.     Hohla & Wyss Merchants, LLC's gross revenue exceeds $500,000 per year.

**Hohla & Wyss Outfits, LLC**

60.     Defendant Hohla & Wyss Outfits, LLC is a limited liability company registered to do business in Ohio.

61.     Jon Wyss, Erika Wyss, and Brad Hohla are the owners of Hohla & Wyss Outfits, LLC.

62.     Hohla & Wyss Outfits, LLC has substantial control over the working conditions of Defendants' delivery drivers, and over the unlawful policies and practices alleged herein.

63.     Hohla & Wyss Outfits, LLC has direct or indirect control of the terms and conditions of the work of Defendants' delivery drivers.

64.     At all relevant times, Hohla & Wyss Outfits, LLC maintained control, oversight, and direction over the Defendants' delivery drivers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

65.     Hohla & Wyss Outfits, LLC is an "employer" of Defendants' delivery drivers as that term is defined by the FLSA, the OMFWSA, and Section 34a.

66.     At all relevant times, Hohla & Wyss Outfits, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

67.     Hohla & Wyss Outfits, LLC's gross revenue exceeds $500,000 per year.

**Hohla & Wyss Shops, LLC**

68.     Defendant Hohla & Wyss Shops, LLC is a limited liability company registered to do business in Ohio.

9

69.     Jon Wyss, Erika Wyss, and Brad Hohla are the owners of Hohla & Wyss Shops, LLC.

70.     Hohla & Wyss Shops, LLC has substantial control over the working conditions of Defendants' delivery drivers, and over the unlawful policies and practices alleged herein.

71.     Hohla & Wyss Shops, LLC has direct or indirect control of the terms and conditions of the work of Defendants' delivery drivers.

72.     At all relevant times, Hohla & Wyss Shops, LLC maintained control, oversight, and direction over the Defendants' delivery drivers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

73.     Hohla & Wyss Shops, LLC is an "employer" of Defendants' delivery drivers as that term is defined by the FLSA, the OMFWSA, and Section 34a.

74.     At all relevant times, Hohla & Wyss Shops, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

75.     Hohla & Wyss Shops, LLC's gross revenue exceeds $500,000 per year.

**Hohla & Wyss Ventures, LLC**

76.     Defendant Hohla & Wyss Ventures, LLC is a limited liability company registered to do business in Ohio.

77.     Jon Wyss, Erika Wyss, and Brad Hohla are the owners of Hohla & Wyss Ventures, LLC.

78.     Hohla & Wyss Ventures, LLC has substantial control over the working conditions of Defendants' delivery drivers, and over the unlawful policies and practices alleged herein.

10

79.     Hohla & Wyss Ventures, LLC has direct or indirect control of the terms and conditions of the work of Defendants' delivery drivers.

80.     At all relevant times, Hohla & Wyss Ventures, LLC maintained control, oversight, and direction over the Defendants' delivery drivers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

81.     Hohla & Wyss Ventures, LLC is an "employer" of Defendants' delivery drivers as that term is defined by the FLSA, the OMFWSA, and Section 34a.

82.     At all relevant times, Hohla & Wyss Ventures, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

83.     Hohla & Wyss Ventures, LLC's gross revenue exceeds $500,000 per year.

**Hohla & Wyss Partnerships, LLC**

84.     Defendant Hohla & Wyss Partnerships, LLC is a limited liability company registered to do business in Ohio.

85.     Jon Wyss, Erika Wyss, and Brad Hohla are the owners of Hohla & Wyss Partnerships, LLC.

86.     Hohla & Wyss Partnerships, LLC has substantial control over the working conditions of Defendants' delivery drivers, and over the unlawful policies and practices alleged herein.

87.     Hohla & Wyss Partnerships, LLC has direct or indirect control of the terms and conditions of the work of Defendants' delivery drivers.

11

88.     At all relevant times, Hohla & Wyss Partnerships, LLC maintained control, oversight, and direction over the Defendants' delivery drivers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

89.     Hohla & Wyss Partnerships, LLC is an "employer" of Domino's delivery drivers in Precision Pizza Domino's stores as that term is defined by the FLSA, the OMFWSA, and Section 34a.

90.     At all relevant times, Hohla & Wyss Partnerships, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

91.     Hohla & Wyss Partnerships, LLC's gross revenue exceeds $500,000 per year.

**Jon Wyss**

92.     Defendant Jon Wyss is an owner of all of the Defendant entities that own the five Dayton, Ohio area Jimmy John's stores.

93.     Jon Wyss is a member of Hohla & Wyss Enterprises, LLC; Hohla & Wyss Cooperatives, LLC; Hohla & Wyss Establishments, LLC; Hohla & Wyss Merchants, LLC; Hohla & Wyss Outfits, LLC; Hohla & Wyss Shops, LLC; Hohla & Wyss Ventures, LLC; Hohla & Wyss Partnerships, LLC.

94.     Jon Wyss is individually liable to Defendants' delivery drivers under the definitions of "employer" set forth in the FLSA, the OMFWSA, and Section 34a because he owns and operates the Defendants' Jimmy John's stores, serves as a member of the Defendant entities named herein, ultimately controls significant aspects of the Defendant entities' day-to-day

12

functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

95.     By virtue of his role as owner and member of the Defendant entities, Jon Wyss has had financial control over the operations at each of Defendants' Jimmy John's stores.

96.     By virtue of his role as owner and member of the Defendant entities, Jon Wyss has a role in significant aspects of Defendants' Jimmy John's stores' day to day operations.

97.     By virtue of his role as owner and member of the Defendant entities, Jon Wyss has had control over Defendants' Jimmy John's stores' pay policies.

98.     By virtue of his role as owner and member of the Defendant entities, Jon Wyss has had power over personnel and payroll decisions at Defendants' Jimmy John's stores, including but not limited to influence over delivery driver pay.

99.     By virtue of his role as owner and member of the Defendant entities, Jon Wyss has had the power to hire, fire and discipline employees, including Plaintiff and other delivery drivers at Defendants' Jimmy John's stores.

100.     By virtue of his role as owner and member of the Defendant entities, Jon Wyss has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

101.     By virtue of his role as owner and member of the Defendant entities, Jon Wyss has had the power to transfer the assets and liabilities of the Defendant entities.

102.     By virtue of his role as owner and member of the Defendant entities, Jon Wyss has had the power to declare bankruptcy on behalf of each of the Defendant entities.

13

103. By virtue of his role as owner and member of the Defendant entities, Jon Wyss has had the power to enter into contracts on behalf of each of the Defendants' Jimmy John's stores.

104. By virtue of his role as owner and member of the Defendant entities, Jon Wyss has had the power to close, shut down, and/or sell each of Defendants' Jimmy John's stores.

105. By virtue of his role as owner and member of the Defendant entities, Jon Wyss had authority over the overall direction of each of Defendants' Jimmy John's stores and was ultimately responsible for their operations.

106. Defendants' Jimmy John's stores function for Jon Wyss's profit.

107. Jon Wyss has influence over how Defendants' Jimmy John's stores can run more profitably and efficiently.

**Erika Wyss**

108. Defendant Erika Wyss is an owner of all of the Defendant entities that own the five Dayton, Ohio area Jimmy John's stores.

109. Erika Wyss is a member of Hohla & Wyss Enterprises, LLC; Hohla & Wyss Cooperatives, LLC; Hohla & Wyss Establishments, LLC; Hohla & Wyss Merchants, LLC; Hohla & Wyss Outfits, LLC; Hohla & Wyss Shops, LLC; Hohla & Wyss Ventures, LLC; Hohla & Wyss Partnerships, LLC.

110. Erika Wyss is individually liable to Defendants' delivery drivers under the definitions of "employer" set forth in the FLSA, the OMFWSA, and Section 34a because she owns and operates the Defendants' Jimmy John's stores, serves as a member of the Defendant entities named herein, ultimately controls significant aspects of the Defendant entities' day-to-day

14

functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

111. By virtue of her role as owner and member of the Defendant entities, Erika Wyss has had financial control over the operations at each of Defendants' Jimmy John's stores.

112. By virtue of her role as owner and member of the Defendant entities, Erika Wyss has a role in significant aspects of Defendants' Jimmy John's stores' day to day operations.

113. By virtue of her role as owner and member of the Defendant entities, Erika Wyss has had control over Defendants' Jimmy John's stores' pay policies.

114. By virtue of her role as owner and member of the Defendant entities, Erika Wyss has had power over personnel and payroll decisions at Defendants' Jimmy John's stores, including but not limited to influence over delivery driver pay.

115. By virtue of her role as owner and member of the Defendant entities, Erika Wyss has had the power to hire, fire and discipline employees, including Plaintiff and other delivery drivers at Defendants' Jimmy John's stores.

116. By virtue of her role as owner and member of the Defendant entities, Erika Wyss has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

117. By virtue of her role as owner and member of the Defendant entities, Erika Wyss has had the power to transfer the assets and liabilities of the Defendant entities.

118. By virtue of her role as owner and member of the Defendant entities, Erika Wyss has had the power to declare bankruptcy on behalf of each of the Defendant entities.

15

119.    By virtue of her role as owner and member of the Defendant entities, Erika Wyss has had the power to enter into contracts on behalf of each of the Defendants' Jimmy John's stores.

120.    By virtue of her role as owner and member of the Defendant entities, Erika Wyss has had the power to close, shut down, and/or sell each of Defendants' Jimmy John's stores.

121.    By virtue of her role as owner and member of the Defendant entities, Erika Wyss had authority over the overall direction of each of Defendants' Jimmy John's stores and was ultimately responsible for their operations.

122.    Defendants' Jimmy John's stores function for Erika Wyss's profit.

123.    Erika Wyss has influence over how Defendants' Jimmy John's stores can run more profitably and efficiently.

**Brad Hohla**

124.    Defendant Brad Hohla is an owner of all of the Defendant entities that own the five Dayton, Ohio area Jimmy John's stores.

125.    Brad Hohla is a member of Hohla & Wyss Enterprises, LLC; Hohla & Wyss Cooperatives, LLC; Hohla & Wyss Establishments, LLC; Hohla & Wyss Merchants, LLC; Hohla & Wyss Outfits, LLC; Hohla & Wyss Shops, LLC; Hohla & Wyss Ventures, LLC; Hohla & Wyss Partnerships, LLC.

126.    Brad Hohla is individually liable to Defendants' delivery drivers under the definitions of "employer" set forth in the FLSA, the OMFWSA, and Section 34a because she owns and operates the Defendants' Jimmy John's stores, serves as a member of the Defendant entities named herein, ultimately controls significant aspects of the Defendant entities' day-to-day

16

functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

127. By virtue of his role as owner and member of the Defendant entities, Brad Hohla has had financial control over the operations at each of Defendants' Jimmy John's stores.

128. By virtue of his role as owner and member of the Defendant entities, Brad Hohla has a role in significant aspects of Defendants' Jimmy John's stores' day to day operations.

129. By virtue of his role as owner and member of the Defendant entities, Brad Hohla has had control over Defendants' Jimmy John's stores' pay policies.

130. By virtue of his role as owner and member of the Defendant entities, Brad Hohla has had power over personnel and payroll decisions at Defendants' Jimmy John's stores, including but not limited to influence over delivery driver pay.

131. By virtue of his role as owner and member of the Defendant entities, Brad Hohla has had the power to hire, fire and discipline employees, including Plaintiff and other delivery drivers at Defendants' Jimmy John's stores.

132. By virtue of his role as owner and member of the Defendant entities, Brad Hohla has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

133. By virtue of his role as owner and member of the Defendant entities, Brad Hohla has had the power to transfer the assets and liabilities of the Defendant entities.

134. By virtue of his role as owner and member of the Defendant entities, Brad Hohla has had the power to declare bankruptcy on behalf of each of the Defendant entities.

17

135. By virtue of his role as owner and member of the Defendant entities, Brad Hohla has had the power to enter into contracts on behalf of each of the Defendants' Jimmy John's stores.

136. By virtue of his role as owner and member of the Defendant entities, Brad Hohla has had the power to close, shut down, and/or sell each of Defendants' Jimmy John's stores.

137. By virtue of his role as owner and member of the Defendant entities, Brad Hohla had authority over the overall direction of each of Defendants' Jimmy John's stores and was ultimately responsible for their operations.

138. Defendants' Jimmy John's stores function for Brad Hohla's profit.

139. Brad Hohla has influence over how Defendants' Jimmy John's stores can run more profitably and efficiently.

Facts

**Class-wide Factual Allegations**

140. Defendants and own and operate approximately five Jimmy John's locations in the Dayton, Ohio area.

141. Plaintiff worked for Defendants as a delivery driver.

142. All delivery drivers at Defendants' Jimmy John's stores are primarily responsible for delivering subs and other food items to customers' homes and workplaces.

143. When there are no deliveries to make, Defendants' delivery drivers complete tasks inside the store, such as make subs, clean, take orders, and completing other tasks as necessary.

144. At all relevant times, Defendants' delivery drivers have been paid at or close to minimum wage, or minimum wage minus a tip credit.

18

145.    Defendants require their delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' subs and other food items.

146.    Defendants require their delivery drivers to incur and/or pay job-related expenses for the benefit of Defendants, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone and data usage, and other equipment necessary for Defendants' delivery drivers to complete their job duties. Defendants' delivery drivers' cars also depreciate in value for the benefit of Defendants.

147.    Defendants have not tracked or maintained records of their delivery drivers' actual expenses.

148.    Defendants have not reimbursed their delivery drivers for the drivers' actual expenses incurred by them.

149.    Defendants have not reimbursed their delivery drivers at the IRS standard business mileage rate for each mile they drove completing deliveries.

150.    Until approximately early 2017, Defendants did not provide delivery drivers with any reimbursement payment for the expenses the delivery drivers incurred while completing deliveries.

151.    In approximately early 2017, Defendants began providing delivery drivers with a reimbursement payment on a per-mile basis that was not adequate to cover their expenses.

152.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

        a.      2015: 57.5 cents/mile
        b.      2016: 54 cents/mile
        c.      2017: 53.5 cents/mile
        d.      2018: 54.5 cents/mile

153. Defendants' delivery drivers experience lower gas mileage, more rapid vehicle depreciation, higher insurance rates, and greater vehicle expenses than the average business driver because they typically drive in "start and stop" traffic, on a tight schedule, at night, in inclement weather, and constantly turning their car on and off.

154. Hohla & Wyss Enterprises, LLC did not maintain records of and pay for their delivery drivers actual delivery-related expenses.

155. Hohla & Wyss Enterprises, LLC did not reimburse delivery drivers at the IRS standard business mileage rate for each mile they drove completing deliveries for Defendants.

156. Hohla & Wyss Cooperatives, LLC did not maintain records of and pay for their delivery drivers actual delivery-related expenses.

157. Hohla & Wyss Cooperatives, LLC did not reimburse delivery drivers at the IRS standard business mileage rate for each mile they drove completing deliveries for Defendants.

158. Hohla & Wyss Establishments, LLC did not maintain records of and pay for their delivery drivers actual delivery-related expenses.

159. Hohla & Wyss Establishments, LLC did not reimburse delivery drivers at the IRS standard business mileage rate for each mile they drove completing deliveries for Defendants.

160. Hohla & Wyss Merchants, LLC did not maintain records of and pay for their delivery drivers actual delivery-related expenses.

161. Hohla & Wyss Merchants, LLC did not reimburse delivery drivers at the IRS standard business mileage rate for each mile they drove completing deliveries for Defendants.

162. Hohla & Wyss Outfits, LLC did not maintain records of and pay for their delivery drivers actual delivery-related expenses.

20

163.    Hohla & Wyss Outfits, LLC did not reimburse delivery drivers at the IRS standard business mileage rate for each mile they drove completing deliveries for Defendants.

164.    Hohla & Wyss Shops, LLC did not maintain records of and pay for their delivery drivers actual delivery-related expenses.

165.    Hohla & Wyss Shops, LLC did not reimburse delivery drivers at the IRS standard business mileage rate for each mile they drove completing deliveries for Defendants.

166.    Hohla & Wyss Ventures, LLC did not maintain records of and pay for their delivery drivers actual delivery-related expenses.

167.    Hohla & Wyss Ventures, LLC did not reimburse delivery drivers at the IRS standard business mileage rate for each mile they drove completing deliveries for Defendants.

168.    Hohla & Wyss Partnerships, LLC did not maintain records of and pay for their delivery drivers actual delivery-related expenses.

169.    Hohla & Wyss Partnerships, LLC did not reimburse delivery drivers at the IRS standard business mileage rate for each mile they drove completing deliveries for Defendants.

170.    As a result of the automobile and other job-related expenses incurred by Defendants' delivery drivers, they were deprived of minimum wage and overtime wages guaranteed to them by the FLSA and Ohio law.

171.    Defendants also paid their delivery drivers on different paychecks, issued by different Defendant entities, for work completed during the same pay period.

172.    As a result, Defendants' delivery drivers were paid "straight time" for hours worked over 40 per workweek.

173. Defendants apply the same or similar pay policies, practices, and procedures to all of their delivery drivers.

174. Defendants' delivery drivers had similar experiences to that of Plaintiff. They were subject to the same or similar reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

175. Regardless of the precise amount of the per-delivery or per-mile reimbursement at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of Defendants' delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

176. Because Defendants paid their delivery drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations.

177. Defendants are relying on the same flawed policy and methodology with respect to all of their delivery drivers. Thus, although reimbursement amounts may differ somewhat by time or store, the amounts of under-reimbursements relative to automobile costs incurred are relatively consistent between time and store.

178. Defendants have willfully failed to pay federal and Ohio state minimum wage and overtime to their delivery drivers.

**Plaintiff's Individual Factual Allegations**

22

179.    Consistent with their policies, patterns, and practices as described herein, Defendants harmed Plaintiff, individually, as follows:

180.    Plaintiff worked at Jimmy John's store located near the Fairfield Commons Mall in Beavercreek, Ohio from approximately 2016 to early 2017.

181.    Plaintiff has also covered shifts at all of Defendants' other Jimmy John's locations.

182.    Plaintiff was subject to the same compensation and reimbursement terms at all of Defendants' Jimmy John's locations.

183.    As a delivery driver, Plaintiff was paid minimum wage minus a tip credit for all hours worked.

184.    Specifically, Plaintiff was paid $7.00 per hour for all hours worked.

185.    In one or more workweeks, Plaintiff worked over 40 hours per week.

186.    Plaintiff was denied overtime pay because Defendants paid him for his hours on two separate paychecks for the same pay period, neither of which showed or paid for overtime hours.

187.    Plaintiff delivered subs and other food items to Defendants' customers' homes and businesses.

188.    When he was not making deliveries, Plaintiff worked inside the restaurant, completing tasks such as taking orders over the phone and in person, checking out carryout customers, making subs, cleaning up around the store, and taking care of other general tasks for the operation of the restaurant.

189.    Until approximately early 2017, Plaintiff did not receive any reimbursement payment from Defendants to cover his delivery-related expenses.

23

190.    Starting in approximately early 2017, Plaintiff began receiving a per-mile delivery reimbursement amount that was not adequate to cover his expenses. Upon information and belief, Plaintiff received $.24 per mile during this period.

191.    Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

192.    Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, and other equipment necessary for delivery drivers to complete their job duties.

193.    Plaintiff purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, and incur cell phone and data charges all for the primary benefit of Defendants.

194.    At all relevant times, Defendants did not track the actual expenses incurred by Plaintiff.

195.    Plaintiff was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

196.    Plaintiff regularly makes approximately three to four deliveries per hour during the hours he works as a delivery driver.

197.    Plaintiff regularly drove between 3 to 4 miles round trip per delivery.

198.    In 2017, for example, the IRS business mileage reimbursement has been $.535 per mile, which reasonably approximated the automobile expenses incurred delivering food. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using that IRS rate as a reasonable approximation of Plaintiff's automobile expenses, every mile driven on the job

24

decreased his net wages by approximately $.535 per mile before the policy change in 2017, and $.295 per mile after the policy change in 2017. Considering Plaintiff's estimate of about 5 average miles per delivery, Defendants under-reimbursed him about $2.675 per delivery ($.535 x 5 average miles) before the policy change in 2017, and $1.475 per delivery after the policy change in 2017.

199.    Thus, while making deliveries, Plaintiff consistently "kicked back" to Defendants approximately $6.69 per hour ($2.675 per delivery x 2.5 deliveries per hour) before the policy change in 2017, and approximately $3.69 per hour ($1.475 x 2.5 deliveries per hour) after the policy change in 2017.

200.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff minimum wage or proper overtime wages as required by law.

## Collective Action Allegations

201.    Plaintiff brings the First and Second Counts on behalf of himself and all similarly situated current and former Jimmy John's delivery drivers employed by Defendants during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter (the "FLSA Collective").

202.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked, time-and-one-half overtime pay for hours worked in excess of 40 per workweek, and failing to

reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

203.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

204.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked.

205.    Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

206.    Defendants are aware or should have been aware that federal law required them to pay non-exempt employees an overtime premium for hours worked over 40 per workweek.

207.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

208.    The First and Second Counts are properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

209.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## Class Action Allegations

210.    Plaintiff brings the Third, Fourth, Fifth, and Sixth Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former Jimmy John's delivery drivers employed by Defendants in the State of Ohio during the three years preceding the filing of the Complaint and the date of final judgment in this matter ("Rule 23 Class").

26

211.    Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; any individual who is a member of a certified class action that is currently pending in any other court; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

212.    The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

213.    There are more than 50 Rule 23 Class members.

214.    Common questions of law and fact exist as to the Rule 23 Class.

215.    Common questions of law and fact predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

    a.  Whether Defendants paid Plaintiff and the Rule 23 Class members at the proper minimum wage rate for all hours worked;

    b.  Whether Defendants required Plaintiff and the Rule 23 Class to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

    c.  Whether Plaintiff and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

    d.  Whether Defendants reimbursed Plaintiff and the Rule 23 Class for their actual expenses;

    e.  Whether Defendants maintained records of Plaintiff and the Rule 23 Class' actual expenses;

    f.  Whether Defendants reimbursed Plaintiff and the Rule 23 Class at the IRS standard business mileage rate for the miles they drove completing deliveries;

27

g. Whether Defendants reasonably approximated the automobile expenses, gasoline expenses, and other job-related expenses incurred by Plaintiff and the Rule 23 Class;

h. Whether Defendants properly compensated Plaintiff and the Rule 23 Class for hours worked in excess of 40 each workweek;

i. Whether Defendants failed to pay Plaintiff and the Rule 23 Class in a timely manner as described by O.R.C. § 4113.15;

j. Whether Defendants' policy of failing to pay Plaintiff and the Rule 23 Class was instituted willfully or with reckless disregard of the law; and

k. The nature and extent of class-wide injury and the measure of damages for those injuries.

216. Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

217. Plaintiff and the Rule 23 Class members' claims are based on the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to pay overtime, and failing to reimburse for expenses.

218. Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Ohio law.

219. Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

220. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

221.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.

222.    Upon information and belief, Defendants and other employers throughout the state violate the OMFWSA, Section 34a, and O.R.C. § 4113.15.  Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

223.    Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

224.    By seeking to represent the interests of the Rule 23 Class members, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

225.    In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

### CAUSES OF ACTION

**Count 1**
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

226. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

227. Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

228. Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked while completing deliveries.

229. Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses. 29 C.F.R. § 531.35.

230. Defendants required and continue to require Plaintiff and the FLSA Collective to work "dual jobs" where they complete non-tipped duties inside the store while being paid minimum wage minus a tip credit. 29 C.F.R. § 531.56(e).

231. By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

232. Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

233. As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Overtime Wages – Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

234. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

235. Plaintiff and the FLSA Collective worked more than forty hours in one or more workweeks.

236. Because Defendants required Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket for which they were not adequately reimbursed, Defendants did not pay Plaintiff and the FLSA Collective at least one and a half times their normal hourly rate for time worked in excess of forty hours per workweek.

237. Defendants also paid Plaintiff and the FLSA Collective on multiple paychecks during the same pay periods in order to conceal that the employees had worked more than 40 hours per week, and paid Plaintiff and the FLSA Collective their regular hourly rate for all of these hours.

238. By not paying Plaintiff and the FLSA Collective proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have willfully violated the FLSA.

239. As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 3**
**Failure to Pay Minimum Wages - Ohio Constitution, Article II, § 34a**
**(On Behalf of Plaintiff and the Rule 23 Class)**

240. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

241.    Because Defendants required Plaintiff and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket without adequate reimbursement, Defendants failed pay Plaintiff and the Rule 23 Class minimum wage.

242.    Defendants paid Plaintiff and the Rule 23 Class at minimum wage minus a tip credit for hours they worked in a non-tipped capacity.

243.    By not paying Plaintiff and the Rule 23 Class at least minimum wage for each hour worked, Defendants have violated Section 34a.

244.    As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional two times unpaid wages/unreimbursed expenses in damages, costs, attorneys' fees, and pre-judgment and post-judgment interest.

### Count 4
### Failure to Pay Overtime Wages – Ohio Minimum Fair Wage Standards Act
### (On Behalf of Plaintiff and the Rule 23 Class)

245.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

246.    Plaintiff and the Rule 23 Class worked more than forty hours in one or more workweeks.

247.    Because Defendants required Plaintiff and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket without adequate reimbursement, Defendants did not pay Plaintiff and the Rule 23 Class at least one and a half times their normal hourly rate for time worked in excess of forty hours per workweek.

32

248.    Defendants also paid Plaintiff and the Rule 23 Class on multiple paychecks during the same pay periods in order to conceal that the employees had worked more than 40 hours per week, and paid Plaintiff and the Rule 23 Class their regular hourly rate for all of these hours.

249.    By not paying Plaintiff and the Rule 23 Class proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have violated the OMFWSA.

250.    As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid overtime wages, unreimbursed expenses, costs, attorneys' fees, and pre-judgment and post-judgment interest.

**Count 5**
**Untimely Payment of Wages – O.R.C. § 4113.15**
**(On Behalf of Plaintiff and the Rule 23 Class)**

251.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

252.    During all relevant times, Defendants were entities covered by O.R.C. § 4113.15, and Plaintiff and the Rule 23 Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

253.    O.R.C. § 4113.15(A) requires that Defendants pay Plaintiff and the Rule 23 Class all wages, including unpaid overtime, on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

254.    Plaintiff and the Rule 23 Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

33

255.     In violating Ohio law, Defendants acted willfully, without a good faith basis and with reckless disregard to Ohio law.

256.     As a result of Defendants' willful violation, Plaintiff and the Rule 23 Class are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

**Count 6**
**Damages Pursuant to O.R.C. § 2307.60**
**(On Behalf of Plaintiff and the Rule 23 Class)**

257.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

258.     The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

259.     By their acts and omissions described herein, Defendants have willfully violated the FLSA, and Plaintiff and the Rule 23 Class have been injured as a result.

260.     O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

261.     As a result of Defendants' willful violations of the FLSA, Plaintiff and the Rule 23 Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

**WHEREFORE**, Plaintiff Ray Arp prays for all of the following relief:

A.     Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and his counsel to represent the collective action members;

34

B.      Unpaid minimum wages, overtime pay, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.      Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

E.      A declaratory judgment that the practices complained of herein are unlawful under Section 34a, the OMFWSA, and O.R.C. § 4113.15.

F.      An award of unpaid minimum wages, overtime wages, and unreimbursed expenses due under Section 34a and the OMFWSA.

G.      An award of damages under Section 34a, based on Defendants' failure to pay minimum wages pursuant to Section 34a, calculated as an additional two times of back wages.

H.      Liquidated damages under O.R.C. § 4113.15.

I.      Compensatory and punitive damages under O.R.C. § 2307.60.

J.      An award of prejudgment and post-judgment interest.

K.      A declaratory judgment that Defendants' delivery drivers must be reimbursed for the actual costs of their delivery-related expenses, with associated recordkeeping, or at the IRS standard business mileage rate for each mile driven.

L.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

M.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/ Andrew Kimble
Andrew Biller (0081452) (Lead Counsel)
Andrew Kimble (0093172)
Markovits, Stock & DeMarco, LLC
3825 Edwards Road, Suite 650
513-651-3700 (Phone)
513-665-0219 (Fax)
(*abiller@msdlegal.com*)
(*akimble@msdlegal.com*)
www.msdlegal.com

*Counsel for Plaintiff and the putative class*

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Andrew Kimble
Andrew Kimble