IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| Ray Arp, | |
| *On behalf of himself and those similarly situated*, | Case No. 3:18-cv-119 |
| Plaintiff, | Judge Walter H. Rice |
| v. | |
| Hohla & Wyss Enterprises, LLC, | |
| Defendants. | |

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL

Plaintiff asks that the Court preliminarily approve the parties' Settlement Agreement, attached as Exhibit 1. The proposed Settlement Agreement resolves the collective/class-wide claims raised in this lawsuit.

The parties request that the Court:

(1) Preliminarily approve the proposed settlement;

(2) Approve the content, form, and distribution of the class notice and claim form;

(3) Preliminarily approve the service award for Plaintiff;

(4) Provisionally approve Class Counsel's request for attorneys' fees and costs; and

(5) Schedule a formal fairness hearing approximately 160 days after preliminary approval.

Respectfully submitted,

*/s/ Andrew Kimble*

Andrew R. Biller (0081452)
BILLER & KIMBLE, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (0093172)
Philip J. Krzeski (0095713)
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff*

---

Memorandum in Support of Plaintiff's Unopposed Motion to
Preliminarily Approve Settlement

---

1. **Introduction**

The parties have reached a settlement that would resolve all of the claims raised in this lawsuit. Plaintiff now asks the Court for preliminary approval of the parties' Settlement Agreement, attached as Exhibit 1.

2. **Standard for Settlement Approval**

Courts typically use a three-step procedure for approving settlements. *Merkner v. AK Steel Corp.*, No. 1:09-cv-423, 2011 WL 13202401, at *1 (S.D. Ohio Jan. 10, 2011). At this, the first step, the Court determines whether to preliminarily approve the settlement. *Id.* Next, notice of the settlement is sent to interested persons. *Id.* Finally, the Court must decide whether to finalize approval after holding a hearing. *Id.*

In evaluating an FLSA settlement and an Ohio law wage and hour settlement, the Court's role "is comparable to that of a court in a settlement of a class action…" *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012); *quoting Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010). The Court must ensure that the settlement is (1) the product of a bona fide dispute, (2) fair, reasonable, and adequate, and (3) reached through arms-length negotiation. *Id.* at *5–6. As described below, the proposed settlement meets this standard.

3. **Background of the Lawsuit and Claims**

Plaintiff Ray Arp delivered food for Defendants' Jimmy John's franchise operation. On April 12, 2018, he filed this lawsuit on behalf of himself and similarly situated delivery drivers. The parties stipulated to send FLSA collective action notice, and 38 delivery drivers filed consent join forms. *See* Docket. Plaintiff's Complaint alleges several wage and hour violations.

First, Plaintiff claims that Defendants under-reimbursed delivery drivers for the expenses that drivers incurred in having to use their own cars to deliver food. Because Defendants paid the drivers at or below full minimum wage (*i.e.*, Defendants paid a tipped wage), any under-reimbursement could trigger a claim for unpaid minimum wages under the FLSA and Ohio law.

Second, Plaintiff contends that he worked "dual jobs"—one tipped and one non-tipped—which entitled him to be paid full minimum wage for non-tipped work.

Third, Plaintiff contends that delivery drivers were paid their regular hourly rate, rather than time-and-a-half their regular hourly rate, for some overtime hours.

Fourth, Plaintiff brings a claim for additional, liquidated damages under Ohio's Prompt Pay Act Claim. Plaintiff's Prompt Pay Act claim can be contingent on an underlying wage and hour violation. *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385, n.1 (6th Cir. 2016). Still, for Plaintiff to prevail on the liquidated damages claim (as opposed to just repayment of unpaid wages alone), he needs to show that there is no dispute regarding the underlying unpaid wages. O.R.C. 4113.15(B).

4. **Summary of Settlement Terms**

The settlement agreement creates a settlement fund of $1,000,000, inclusive of attorney's fees, expenses, and service awards. *See* Exhibit 1. Under the terms of the Agreement, unless they

decide to opt out, each class member who worked for Defendants at any time between April 12, 2015 and February 24, 2020 will receive a share of the settlement fund.

After subtracting fees, expenses, and service awards, the remaining settlement fund will be distributed as follows: each FLSA opt-in Plaintiff will receive $200 to account for their slightly superior claims, and the remaining amount will be allocated to the class members based on the total number of hours they worked for Defendants during the relevant time period.

The settlement fund will be distributed in three payments: (1) 25% of the fund will be paid 30 days after the Court grants final approval or November 30, 2020 (whichever is later), (2) 25% of the settlement fund will be paid on May 30, 2021, and (3) the last 50% of the settlement fund will be paid on October 15, 2021.

Upon preliminary approval, a Notice of Settlement (attached as Exhibit 2) will be distributed to the class members providing them with an opportunity to object or opt out before the Court considers whether to grant final approval. The Notice Period is 60 days.

As part of the settlement, Defendants agree not to oppose Plaintiff's counsel's request for a fee award of 33.33% of the common fund, advanced expenses, up to $5,000 toward the cost of settlement administration (with Defendants paying the remainder), and a $10,000 service award for the plaintiff.

**5. The settlement provides for a fair resolution of disputed claims.**

The most important factor to consider when evaluating a proposed settlement is Plaintiffs' probability of success on the merits. *Kritzer*, 2012 WL 1945144, at *6. To do that, Plaintiff will describe the facts and law underlying his claims.

### 5.1. Under-reimbursement Claim

It is undisputed that food delivery companies must pay their minimum wage workers for expenses incurred as a result of the workers using their own cars for deliveries. The real dispute is over how much Defendants should have reimbursed.

Plaintiff claim that Defendants have two options: (1) track and reimburse each drivers' actual expenses or (2) reimburse the drivers at the IRS standard business mileage rate. Complaint, Doc. 1, ¶¶ 74-81. *See, e.g., Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 WL 5725043 (S.D. Ohio Nov. 5, 2019); *Brandenburg v. Cousin Vinny's Pizza*, No. 3:16-cv-516, 2019 WL 6310376 (S.D. Ohio Nov. 25, 2019). Defendants deny Plaintiff's allegations and dispute that they were required to reimburse at the IRS rate.

Defendants did not reimburse delivery drivers at all until April 2017. Since April 2017, Defendants have reimbursed delivery drivers approximately $.29 per mile. The unpaid wages for this claim, if calculated at the IRS rate, are approximately $500,000. In addition, Plaintiff would have sought an additional 1× unpaid wages as FLSA liquidated damages and an additional 2× unpaid wages as Ohio Constitution damages. *See* 29 U.S.C. § 260; Oh. Const., Art. II, § 34a.

### 5.2. "Dual Jobs" Claim

Plaintiff contends that he worked in both a tipped and non-tipped capacity. Specifically, Plaintiff was paid $7.00 per hour for all hours worked. In other words, for some of his work time, he worked on the road, delivering food and earning tips. Plaintiff contends that he also spent time working in the store, not generating tips. To the extent that Plaintiff worked in two occupations (i.e., "dual jobs"), he is entitled to be paid at full minimum wage for any non-tipped work. 29 C.F.R. 531.56(e). Defendants, however, contend that Plaintiff's in-store work was so related to his

4

tipped work as to be part of the same occupation, thus entitling Defendants to pay a tipped wage rate for all of the work. The unpaid wages for this claim range, if it were proven, range from approximately $15,000 to $50,000 depending on how much time the drivers spent inside the store. From there, Plaintiff sought the application of FLSA and Ohio Constitution damages.

### 5.3. Overtime Claim

Plaintiff alleged that delivery drivers were sometimes paid their regular hourly rate for overtime hours because they worked at two different Jimmy John's locations for more than 40 total hours, but were paid on separate paychecks. As a result, some weeks where the class members exceeded 40 hours of work, they were not paid time-and-a-half for their overtime hours. If Plaintiff prevailed on this claim, Plaintiff estimates the total unpaid wages for the class were approximately $20,000, before the application of FLSA liquidated damages and Ohio Constitution damages.

### 5.4. Prompt Pay Act Claim

Plaintiff also asserts a claim under Ohio's Prompt Pay Act, O.R.C. § 4113.15. This claim essentially has two components—unpaid wages and liquidated damages.

The unpaid wages portion can "rise and fall" with an underlying wage violation (*i.e.*, like an FLSA violation). *See, e.g., Parks v. Cent. USA Wireless, LLC*, No. 1:17-cv-448, 2019 WL 4743648, at *5 (S.D. Ohio Sept. 29, 2019). Because the damages for this claim mirror the unpaid wages for the above violations, the analysis is the same (obviously, Plaintiff may only recover unpaid wages once).

The liquidated damages portion, however, is only available when there is no dispute as to the underlying wages. O.R.C. 4113.15(B). Here, there is arguably a dispute over whether the

unpaid wages were due. If Plaintiff prevailed on this claim, the class could have been awarded an additional $2 million.

### 5.5. Other Considerations

When evaluating settlements, courts also look at other factors, including (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceedings and amount of discovery completed; (3) the judgment of experienced trial counsel; (4) the nature of the negotiations; (5) any objections from class members; (6) the objections, if any, raised by class members; and (7) the public interest. *Kritzer*, 2012 WL 1945144, at *6. Each factor is addressed below.

**Complexity, expense, and likely duration.** As the Court has recognized, wage and hour class and collective actions are inherently complex and time-consuming. *Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018). This factor supports approving the proposed settlement.

**The stage of the proceedings and amount of discovery completed.** This case was actively litigated for nearly two years.

The parties completed substantial discovery that supports settlement of the claims raised in this case. Defendants produced payroll records relating to the delivery drivers' hours worked and wages paid, and records of the reimbursement payments made to delivery drivers. Defendants also produced to Plaintiff records of all of the deliveries completed from April 2016 through 2018. Plaintiff retained an IT expert to analyze and evaluate the number of miles driven by the delivery drivers. The parties then worked together to reach a mutual agreement as to the best possible

6

estimate of the number of miles driven by delivery drivers. This data formed the basis of the parties' settlement negotiations.

While discussing settlement, Plaintiff was also preparing to file a Motion for Rule 23 Class Certification. Before Plaintiff finalized his Motion, the parties reached the agreement currently before the Court.

In light of these factors, the parties are able to properly evaluate settlement at this stage.

**The judgment of experienced trial counsel.** Plaintiff's counsel attests that, given the strengths and weaknesses of the claims and collectability, this settlement is fair, adequate, and reasonable. Plaintiff's counsel are well-versed in delivery driver cases. *See Mullins v. Southern Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 275711, at *5 (S.D. Ohio Jan. 18, 2019). Defendants' counsel are likewise experts in employment law.

**The nature of the negotiations.** The parties reached the above settlement only after substantial negotiations, which included a private mediation with Henry L. Stephens, Jr., a respected mediator. The case did not settle at the mediation, and, instead, the parties continued to negotiate. Ultimately, they reached the agreement now before the Court. To accommodate Defendants' concerns about their ability to pay under the terms of the agreement, the parties agreed to three payments over the course of a year, starting with the first payment in November 2020 at the earliest.

**Any objections from class members.** This factor will be evaluated at the final approval stage.

**The public interest.** The public interest generally favors settling class action litigation. This case is no different.

**5.6.    The payment of attorneys' fees is reasonable.**

Class Counsel will apply for one-third of the settlement fund as attorneys' fees ($333,333.00). Defendants have agreed not to object to this award, which is a standard amount in this type of case. *See, e.g.*, *Brandenburg*, 2019 WL 6310376, at *5 (An award of one-third "is a normal fee amount in a wage and hour case."). "One-third of the common fund is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'" *Osman v. Grube, Inc.*, No. 3:16-cv-802, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018); *see also Carr v. Bob Evans Farms, Inc.*, No. 1:17-cv-1875, 2018 WL 7508650, at *4 (N.D. Ohio July 27, 2018) ("In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund.").[1]

Further, the Settlement Agreement is not conditioned on an award of attorneys' fees. *See* Exhibit 1, §4(B). Thus, the Court does not need to decide the issue of attorneys' fees and costs now. In any case, Class Counsel will expend additional attorneys' fees during the notice process and approval process, which could affect the Court's evaluation of the final fee award. At the final

---

[1] *See, e.g.*, *In re Foundry Resins Antitrust Litig.*, No. 04-md-01639, Doc. 245 (S.D. Ohio Mar. 31, 2008) (order awarding a fee of 33 1/3% of a $14.1 million dollar settlement); *In re Packaged Ice Antitrust Litig.*, Case No. No. 08-MDL-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) ("Importantly, the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions.") (Internal citations omitted); *In re Skelaxin Antitrust Litig.*, Case No. 2:12-cv-83, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) (finding "the requested counsel fee of one third is fair and reasonable and fully justified."); *Thacker v. Chesapeake Appalachia*, LLC, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010) ("Using the percentage approach, courts in this jurisdiction and beyond have regularly determined that 30% fee awards are reasonable."); *Kimmel v. Venture Construction Co.*, Case No. 1:10-cv-01388-RLV (N.D. Ga. 2010) (Dkt. 70) (approving 30% of common fund as attorneys' fees and costs); *Moultry v. Cemex, Inc.*, Case No. 8:07-cv-00453- MSS, Dkt. 145 (M.D. Fla. 2008) (awarding 32.25% of common fund as attorneys' fees); *Kemper v. Rent-A-Center, Inc.*, Case No. 4:00-cv-00435-RH-WCS, Docs. 14-15 (N.D. Fla. 2000) (awarding 33.33% of common fund approach to plaintiffs' counsel). In *In re AremisSoft Sec. Litig.*, 210 F.R.D. 109, 134 (D.N.J. 2002), the court stated that "[s]cores of cases exist where fees were awarded in the one-third to one-half of the settlement fund." *See, e.g.*, *Erie County Retirees Ass'n v. County of Erie*, 192 F. Supp. 2d 369, 382-83 (38% of common fund was awarded in ADEA case); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 179-80 (W.D.N.Y. 2005) (almost 40% of $125,000 common fund awarded in a FLSA case); *Gilliam v. Addicts Rehab. Ctr. Fund*, Case No. 05 Civ. 3452(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (finding it reasonable to award class counsel a fee of one-third of the common fund).

fairness hearing, the Court will be in a position to grant final approval to the fee request after taking into account any objections to the fee.

**5.7.    The incentive payment is reasonable, and similar payments are routinely awarded.**

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997); *see also Dun & Bradstreet*, 130 F.R.D 366, 374 (S.D. Ohio 1990) (approving incentive awards to class representatives for their time and expenses incurred pursing the litigation). Such compensation for time, effort, risk, and service does not improperly grant preferential treatment to class representatives.

The settlement agreement earmarks funds from the settlement amount to compensate Plaintiff $10,000. This amount is in line with identical amounts awarded in nearly identical cases. *See Arledge*, 2018 WL 5023950 at *6; *Mullins*, 2019 WL 275711 at *6; *Brandenburg*, 2019 WL 6310376, at **7-8; *Casteel v. Antonio's Pizza, Inc.*, No. 1:18-cv-1277, Doc. 52 (N.D. Ohio May 17, 2019). Plaintiff spent time and effort working with his counsel on this case. As in any case, Plaintiff bore risk in proceeding with the case, including financial and reputational risk. Without Plaintiff's participation, this class settlement would not have occurred.

**6.  For settlement purposes, the Court should certify a class and collective action.**

Rule 23 allows one or more individuals to act on behalf of a class of individuals with similar claims. Representative actions are especially appropriate in wage and hour lawsuits where individual claims may be relatively small, but substantial in the aggregate. For settlement purposes, Plaintiff asks the Court to certify the following hybrid class/collective:

9

> All current and former delivery drivers employed from April 12, 2015 to February 24, 2020 at Defendants' Jimmy John's stores owned, operated, and/or controlled by Defendants.[2]

"A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). As described below, all of the requirements for class certification are met. Defendants consent to class/collective action certification for settlement purposes.

While the FLSA requires similarly-situated workers to affirmatively "opt-in" before becoming a party plaintiff to an action for unpaid wages, Ohio law does not contain such a requirement. *See* Ohio Const. Art. II, Sec. 34a; R.C. 4111.03 and 4111.10. Consequently, plaintiffs may maintain class actions for unpaid wages under Civ. R. 23. *See, e.g., Castillo v. Morales, Inc.*, 302 F.R.D. 480, 489-90 (S.D. Ohio Sept. 2014) (certifying a class for Ohio minimum wage claims); *Brandenburg,* 2018 WL 5800594 (certifying a class asserting similar Ohio minimum wage claims). Because the standard to certify a collective action is easier to meet than the standard under Rule 23, meeting the Rule 23 standard also meets the collective action standard. Therefore, collective action certification is also appropriate here.

### 6.1.    Plaintiff has satisfied the four Rule 23(a) prerequisites for class certification.[3]

---

[2] The Defendants' Jimmy John's stores are defined in the settlement agreement and includes 7 locations. *See* Exhibit 1, §1(B).

[3] Subject to the approval of the Court, and for settlement only, Defendants do not contest whether Plaintiff has satisfied the requirements for class certification pursuant to Rule 23.  Any class certification order entered in this Action pursuant to the Settlement Agreement, or otherwise shall not constitute a waiver or admission, in this or in any other proceeding, by Defendants of a finding or evidence that Plaintiff's claims, the claims of any person in the Settlement Class, or any Released Claims are appropriate for class treatment, or that any requirement for class certification is otherwise satisfied in this Action.  Defendants in no way waive their respective rights to challenge Plaintiff's allegations that a class may be certified in this Action, in the event that the Settlement Agreement does not become effective for any reason.

Under Rule 23(a), Plaintiff must satisfy four prerequisites in order for the Court to certify a class: (1) the class must be "so numerous that joinder of all members is impracticable," (2) "questions of law or fact common to the class" must exist, (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class," and (4) the representative parties must "fairly and adequately protect the interests of the class." As set forth below, for purposes of settlement each of these requirements is satisfied here.

### 6.1.1. Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. "Plaintiffs need not demonstrate that it would be impossible to join all of the putative class members; rather, they need simply show that joinder would be difficult or inconvenient." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 183 (S.D. Ohio 2012).

Here, during the relevant time period, hundreds of class members were employed at the Defendants' stores that were subject to the pay policies alleged in the Complaint. This easily meets the numerosity requirement.

### 6.1.2. Commonality

Rule 23(a)(2)'s commonality requirement is satisfied where there are "questions of law or fact common to the class." Commonality exists "as long as the members of the class have allegedly been affected by a general policy of the defendant, and the general policy is the focus of the litigation." *Sweet v. Gen. Tire & Rubber Co.*, 74 F.R.D. 333, 335 (N.D. Ohio 1976). Individual class members need not be identically situated to meet the commonality requirement. Rather, the "requirement is met where the questions linking the class members are substantially related to the resolution of the litigation even though the individuals are not identically situated." *Swigart*, 288

11

F.R.D. at 183, *citing DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). Moreover, commonality is not required on every question raised in a class action. Rather, Rule 23 is satisfied when the legal question linking the class members is substantially related to the litigation's resolution. *Id.*; *see also Bacon v. Honda of American Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (commonality not required when "[i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue").

Here, Plaintiff maintains that the legal theories and relevant facts are common to the class because the class consists of workers that were allegedly harmed in the same way. Plaintiff has identified the following common questions of law or fact presented by his claims: (1) how much Defendants reimbursed delivery drivers for their expenses, (2) whether Defendants adequately reimbursed delivery drivers for their delivery expenses, (3) the nature and extent of the drivers' in-store work, (4) whether Defendants paid time-and-a-half overtime wages, (5) whether Defendants can dispute whether they adequately compensated drivers, and (6) what damages and liquidated damages are available to the class members as a result of Defendants' practices. Outside of the settlement context—*i.e.*, when Defendants disputed class certification—this Court has found that class certification is appropriate for nearly identical claims. *Brandenburg*, 2018 WL 5800594.

### 6.1.3. Typicality

Rule 23(a)(3) requires that the class representatives' claims be typical of the class members' claims. "Typical does not mean identical, and the typicality requirement is liberally construed." *Swigart*, 288 F.R.D. at 185, *citing Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 57 (N.D.Ill. 1996). "Factual variations in the individual claims will not normally preclude class certification if

the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.*, *citing Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir.1996). The requirement of typicality focuses on the conduct of a defendant and whether a proposed class representative has been injured by the same kind of conduct alleged against the defendant as other members of the proposed class. *Id.*, *citing Clay v. Am. Tobacco Co.,* 188 F.R.D. 483, 491 (S.D.Ill.1999) ("The Court should concentrate on the defendants' alleged conduct and the plaintiffs' legal theory to satisfy Rule 23(a)(3)."). This is why a finding that commonality exists generally results in a finding that typicality also exists. *Violette v. P.A. Days, Inc.,* 214 F.R.D. 207, 214 (S.D. Ohio 2003). Typicality "is generally considered to be satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Swigart*, 288 F.R.D. at 185 (internal citations omitted). Where, as here, "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff[s] and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *Laichev v. JBM, Inc.,* 269 F.R.D. 633, 640-41 (S.D. Ohio 2008). Additionally, differences in the amount of damages allegedly owed each putative class member "is not fatal to a finding of typicality." *Id.* at 641.

Here, Plaintiff is a member of the putative class and his claims are typical of all class members' claims in that they all arise from the same courses of conduct. Plaintiff maintains that each claim in this lawsuit arises from Defendants' pay practices that were applied to all employees in the same way. For example, the same or similar reimbursement rates applied to all class members. Whether Defendants' pay practices are illegal is a question answerable on a class-wide basis. "The premise of the typicality requirement is simply stated: as goes the claims of the named

13

plaintiff, so goes the claims of the class." *Id.* at 640. If Defendants' wage and hour practices violate Ohio law as to Plaintiff, they violate Ohio law as to the putative class members; and, accordingly, the typicality requirement is met here.

### 6.1.4. Adequacy of Representatives

Rule 23(a)(4) requires that class representatives must fairly and adequately protect the interests of the class. This requirement calls for a two-pronged inquiry: (1) Do the representatives have common interests with the unnamed members of the proposed class? (2) Will the representatives vigorously prosecute the interests of the class through qualified counsel? *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). These two requirements are met here.

With respect to the first inquiry, because Plaintiff is challenging the same unlawful conduct and seeking the same relief as would the rest of the class members, Plaintiff's interests are aligned with those of the class members sufficient to satisfy the first prong of the adequacy requirement. *See, e.g., Swigart*, 288 F.R.D. at 186; *Smith v. Babcock*, 19 F.3d 257, n.13 (6th Cir. 1994); *Thomas v. SmithKline*, 201 F.R.D. 386, 396 (E.D. Pa. 2001). Indeed, Plaintiff's interests are essentially identical to all putative class members' interests.

With respect to the second inquiry, the proposed class representative is ready, willing and able to fulfill his duties and has done so to date. Likewise, Plaintiff's counsel is well-qualified to handle this matter. This case is one of many "delivery driver lawsuits" that Plaintiff's counsel is litigating across the nation. Through those cases, counsel have litigated many of the key issues in these cases, including motions to dismiss, motions for summary judgment, and motions for class certification. *See, e.g., Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 WL 1367663 (S.D. Ohio Mar. 26, 2019) (motion to dismiss); *Hatmaker*, 2019 WL 5725043 (motion for summary

judgment); *Thomas v. Papa John's Int'l, Inc.*, No. 1:17-cv-411, 2019 WL 4743637, (S.D. Ohio Sept. 29 2019) (contested motion for conditional certification); *Clark v. Pizza Baker, Inc.*, No. 2:18-cv-157, 2019 WL 4601930 (S.D. Ohio Sept. 23, 2019) (motion to dismiss); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 WL 5800594 (S.D. Ohio Nov. 6, 2018) (contested motion for class certification). Thus, Plaintiff's counsel is well-versed in this area of law and the strengths and weaknesses of the claims at issue. *See Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *6 (S.D. Ohio Nov. 25, 2019) ("The Court is familiar with Class Counsel's work in this and other cases like it. The '[] delivery driver' cases require substantial expertise and firm resources to pursue. The Court agrees that Class Counsel's work in this area is exemplary…"). Plaintiff's counsel have actively and vigorously pursued Plaintiff's (and the putative class members') claims in this case. Plaintiff's counsel has committed, and will continue to commit, the resources necessary to representing the putative class in this case.

### 6.2. Plaintiff has satisfied the Rule 23(b)(3) class certification requirements.

When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any one of three conditions set forth in Rule 23(b). Courts will certify class actions under Rule 23(b)(3) when common issues of fact and law predominate, and the class mechanism is superior to other methods of relief. As discussed below, both of Rule 23(b)(3)'s requirements are met in this case.

### 6.2.1. Common questions of law and fact predominate.

The predominance requirement evaluates whether a proposed class is cohesive enough to merit adjudication by representation. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance is established where "resolution of some of the legal or factual questions that qualify

each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306, F.3d 1247, 1252 (2d Cir. 2002).

There are numerous common questions of law and fact arising out of Defendants' conduct, making this an appropriate case for resolution by means of a class action. Most notably, liability turns on what the proper reimbursement rate is for delivery drivers and whether Defendants paid that rate. These issues would be determined based on common proof, and common questions predominate in this case. *See, e.g., Swigart*, 288 F.R.D. at 186. As a result, this case is appropriate for class certification.

### 6.2.2. A class action is a superior method of adjudication.

The superiority question under Rule 23(b)(3) requires the Court to consider whether a class action is superior to other methods of adjudication. Rule 23(b)(3) lists four factors to be considered: (1) the interests of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action.

Here, there is no evidence that putative class members have any interest in maintaining this litigation in separate actions. Indeed, the relative size of the individual claims in this case makes class resolution perhaps the only way these workers can recover their allegedly unpaid wages in an economical way. *See, e.g., Tedrow v. Cowles*, No. 2:06-cv-637, 2007 WL 2688276, at *8 (S.D. Ohio 2007) ("As Plaintiffs convincingly argue, the majority of putative class members would not likely have their day in court on these claims if a class is not certified because of a lack of sophistication,

16

lack of resources, lack of representation and similar barriers."). Moreover, efficiency favors concentrating the claims in this Court, as there is no record of other, similar litigation pending in Ohio. A final resolution of Defendants' liability is also fair because the case deals with policies affecting large numbers of employees. It avoids competing decisions on the issues and offers finality. There is no device that can resolve these matters as efficiently and fairly as a class action. Finally, no major difficulty is likely to arise in management of the class action as the putative class is a defined size. Class certification here promotes consistent results, giving Defendants "the benefit of finality and repose." *Id.* (internal citations omitted). Adjudicating this matter as a class action is the most efficient and fair manner of resolving these claims.

**7. The proposed notice conforms to federal law.**

The proposed class notice meets the standards set forth in Rule 23(c)(2)(B). The notice clearly and accurately describes the nature of the action, the definition of the class certified, and the class claims and defenses. *See generally* Exhibit 2, Notice of Settlement. The notice also informs putative class members that they may enter an appearance through counsel if the member so desires, that only those employees who file a claim form will participate in the settlement, and explains the binding effect of the release. The notice provides putative class members with an opportunity to file objections to the settlement as required by Rule 23(e)(4)(A), and informs potential class members that they must file an attached claim form in order to receive payment from the settlement.

The Court should direct distribution of the class notice in the manner described in the settlement agreement. The settlement agreement envisions sending the Notice by regular mail and email.

8. **The Court should set a hearing for final approval.**

The parties request that the Court set a hearing for final approval of the settlement to occur approximately 160 days after the Court grants preliminary approval of the proposed settlement. This date would allow a reasonable period for class notices to be mailed and for class members to submit claim forms, object to, or opt-out of the settlement, but would not unduly delay the case's adjudication. The timeline envisioned for administration is below:

| Time | Event |
|---|---|
| Within 14 days of preliminary approval | Defendants provide Class Counsel and the Administrator with the final list of class members, their contact information, and relevant wage and reimbursement data. |
| Within 14 days after receiving the class list | The Administrator will send the notice. |
| Within 60 days after mailing notices | Class members must file a claim form (if an FLSA Subclass member), opt-out, or object, if they choose any of those options. |
| Within 60 days of the notice period deadline | Plaintiff will draft and file a motion for final approval. |
| Within 30 days of final approval, or on November 30, 2020, whichever is later | Defendants will mail checks for the amounts due under the Agreement (25% of settlement fund + the service award). |
| On or before May 30, 2021 | Defendants will mail checks for the amounts due under the Agreement (25% of settlement fund). |
| On or before October 15, 2021 | Defendants will mail checks for the amounts due under the Agreement (50% of settlement fund). |

9. **Conclusion**

Plaintiff asks the Court to enter an Order: (1) granting preliminary approval of the settlement; (2) provisionally approving Class Counsel's request for attorney's fees and costs; (3) approving Plaintiff's service award; (4) directing distribution of the Class Notice and Claim Form to class members to provide an opportunity to join this settlement, or opt-out or object to the settlement; and (5) setting the hearing date for the final approval of the settlement.

Respectfully submitted,

*/s/ Andrew Kimble*
Andrew R. Biller (0081452)
BILLER & KIMBLE, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (0093172)
Philip J. Krzeski (0095713)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff*

19

**<u>Certificate of Service</u>**

Plaintiff certifies that a copy of the foregoing will be automatically served on all parties via the Court's ECF system.

<u>/s/ Andrew Kimble</u>
Andrew Kimble