IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| Ray Arp,<br><br>*On behalf of himself and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>Hohla & Wyss Enterprises, LLC,<br><br>Defendants. | Case No. 3:18-cv-119<br><br>Judge Walter H. Rice |

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL SETTLEMENT APPROVAL

Plaintiff asks that the Court grant final approval of the parties' Settlement Agreement, Doc. 53-1, order the parties to carry out the terms of the Settlement Agreement, and dismiss the case with prejudice. The Settlement Agreement resolves the collective and class-wide claims raised in this lawsuit.

Respectfully submitted,

/s/ Phil Krzeski
Andrew R. Biller (Ohio Bar #0081452)
BILLER & KIMBLE, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620

1

abiller@billerkimble.com

Andrew P. Kimble (Ohio Bar #009372)
Philip J. Krzeski (Ohio Bar #0095713)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
akimble@billerkimble.com
pkrzeski@billerkimble.com
www.billerkimble.com

*Counsel for Plaintiff and the collective/class*

Memorandum in Support of Plaintiff's
Unopposed Motion for Final Settlement Approval

**1. Introduction and Case History**

On May 26, 2020, the Court preliminarily approved the parties' Settlement Agreement and approved the distribution of Notice to the class. *See* Doc. 54.

The Notice process is now complete. None of 621 Jimmy John's delivery drivers who make up the class objected to or opted out of the Settlement.

The Parties now seek an order (1) granting final approval of the Settlement Agreement previously filed as Doc. 53-1 as fair, reasonable, and adequate; (2) certifying this case as a Rule 23 Class Action for settlement purposes; (3) approving the requested award of attorney's fees and costs; (4) approving the service award; (5) dismissing the action with prejudice; and (6) ordering the parties to carry out the remaining terms of the Settlement Agreement.

**2. Standard for Settlement Approval**

Courts use a three-step procedure for approving settlements. *Merkner v. AK Steel Corp.*, No. 1:09-cv-423, 2011 WL 13202401, *1 (S.D. Ohio Jan. 10, 2011). At the first step, the Court determines whether to preliminarily approve the settlement. *Id*. Next, notice is issued to potential Class Members. *Id*. Finally, the Court must decide whether to finalize approval after holding a hearing. *Id*.

In evaluating an FLSA settlement and an Ohio wage and hour settlement, the Court's role "is comparable to that of a court in a settlement of class action…" *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144, *5 (S.D. Ohio May 30, 2012) (quoting *Dillworth v. Case Farms*

*Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, *5 (N.D. Ohio Mar. 8, 2010)). The Court must ensure that the settlement is (1) the product of a bona fide dispute; (2) fair, reasonable, and adequate; and (3) reached through arms-length negotiation. *Id.* at *5-6. As described below, the proposed settlement meets this standard.

### 3. Background and Description of Legal Claims

Plaintiff Ray Arp delivered food for Defendants' seven-store Jimmy John's franchise operation. On April 12, 2018, he filed this lawsuit on behalf of himself and similarly situated delivery drivers. At the outset of the case, the parties stipulated to send FLSA collective action notice, and 38 delivery drivers filed consent to join forms. *See* Docket. Plaintiff alleges several wage and hour violations.

First, Plaintiff claims that Defendants under-reimbursed delivery drivers for the expenses that drivers incurred in having to use their own cars to deliver food. Because Defendants paid the drivers at or below full minimum wage (*i.e.*, Defendants paid a tipped wage rate), any under-reimbursement triggers a clam for unpaid minimum wages under the FLSA and Ohio wage law.

Second, Plaintiff contends that he worked "dual jobs"—one tipped and one non-tipped—which entitled him to be paid full minimum wage for non-tipped work.

Third, Plaintiff contends that delivery drivers were paid their regular hourly wage rate, rather than time-and-a-half their hourly wage rate, for some overtime hours.

Fourth, Plaintiff brings a claim for additional, liquidated damages under Ohio's Prompt Pay Act claim. Plaintiff's Prompt Pay Act Claim can be contingent upon an underlying wage and hour violation. *Craig v. Bridges Bros. Trucking, LLC*, 823 F.3d 382, 385, Fn. 1 (6th Cir. 2016). Still, for Plaintiff to prevail on the liquidated damages claim (as opposed to just repayment of unpaid wages

4

alone), he needs to show that there is no dispute regarding the underlying unpaid wages. R.C. § 4113.15(B).

4. **Summary of Settlement Terms**

The settlement agreement creates a settlement fund of $1,000,000, inclusive of attorney's fees, expenses, and service awards. *See* Exhibit 1. Under the terms of the Agreement, unless they decide to opt out, each Class Member who worked for Defendants at any time between April 12, 2015 and February 24, 2020 will receive a share of the settlement fund.

After subtracting fees, expenses, and service awards, the remaining settlement fund will be distributed to the Class Members as follows. Doc. 53-1, § 3.D.i. There are 621 individuals eligible to be part of the FLSA Subclass, and 38 delivery drivers returned a consent to join form. Each FLSA opt-in Plaintiff will receive $200 to account for their slightly superior claims. *Id.* at § 3.D.ii. Moreover, Class Members who worked overtime will receive a prorated share based on hours worked from a $10,000 "overtime" fund allotted by the Settlement Agreement. *Id.* at § 3.D.iii. The remaining funds will be allocated for Rule 23 Subclass Members with dual jobs and under-reimbursement claims based their proportion of miles driven during the relevant time period. *Id.* at § 3.D.iv. Class Members may receive payments under any one or more of the above allocations. *Id.* at § 3.D.v.

The settlement fund will be distributed by Defendants in three payments: (1) 25% of the fund will be paid 30 days after the Court grants final approval or November 30, 2020 (whichever is later); (2) 25% of the settlement fund will be paid on May 30, 2021; and (3) the last 50% of the settlement fund will be paid on October 15, 2021. *Id.* at § 3.E. All of the settlement money will be distributed. In the case of unclaimed funds or uncashed checks, a fund will be maintained for Class

Members' late claims until February 24, 2023, after which any unclaimed funds will revert to Defendants. *Id.* at § 3.F. The Court shall retain continuing jurisdiction to enforce the terms of the Settlement Agreement. *Id.* at § 3.J.

As part of the settlement, Defendants agree not to oppose Plaintiff's Counsel's request for a fee award of 33.33% of the common fund, advanced expenses, up to $5,000 toward the cost of administration (with Defendants paying the remainder), and a $10,000 service award.

### 5. Notice Process

Plaintiff's Counsel sent notice by first class mail and email (to the extent there was an email address available) to 621 Class Members. Notice was issued by claims administrator CAC Services Group, LLC ("CAC Services Group") via First Class Mail and email. To extent mailings were returned as undeliverable, CAC Services Group performed address tracing to obtain new mailing addresses. The Notice period was 60 days. The Notice Period ended on August 28, 2020, and none of the class members have opted out or objected to the settlement. *See* Declaration Andy R. Biller attached as Exhibit 2 at ¶ 16.

### 6. The Settlement provides for a fair resolution of disputed claims.

#### 6.1. Probability of Success on the Merits

The most important factor to consider when evaluating a proposed settlement is Plaintiff's probability of success on the merits. *Kritzer*, 2012 WL 1945144, at *6. The Sixth Circuit also adheres to the "federal policy favoring settlement of class actions." *Int'l Union, United Auto, Aerospace & Agr. Implement Workers of Am. V. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007); *see also Aro Corp. v. Allied Witan Co.*, 531 F.2d 1268, 1372 (6th Cir. 1976) ("Public Policy strongly favors settlement of disputes without litigation."). Rule 23(e) requires court approval for a class

6

action settlement so that it is procedurally and substantively fair, reasonable, and adequate. FED.R.CIV.P.23(e). Here, the Settlement provides $1,000,000 for the Rule 23 Class, which is more than the entire class' unpaid wages. This is an excellent result, and supports approval of the Settlement.

### 6.1.1. Under-Reimbursement Claim

The primary claim in this case is the mileage under-reimbursement claim. It is undisputed that food delivery companies must pay their minimum wage workers for expenses incurred as a result of the workers using their own cars for deliveries. The real dispute is over how much Defendants should have reimbursed.

Plaintiff claims that Defendants have two options: either (1) track and reimburse each drivers' actual expenses or (2) reimburse the drivers at the IRS standard business mileage rate. Complaint, Doc. 1., ¶¶ 74-81; *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 WL 5725043 (S.D. Ohio Nov. 5, 2019) ("*Hatmaker II*"); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376 (S.D. Ohio Nov. 25, 2019) ("*Brandenburg II*"). Defendants deny Plaintiff's allegations and dispute that they were required to reimburse at the IRS rate.

Defendants did not reimburse delivery drivers at all until April 2017. Since then, Defendants reimbursed delivery drivers approximately $.29 per mile. The unpaid wages for this claim, if calculated at an approximate IRS rate, are approximately $500,000. In addition, Plaintiff would have also sought an additional 1× unpaid wages as FLSA liquidated damages and an additional 2× unpaid wages as Ohio Constitutional damages. *See* 29 U.S.C. § 260; Ohio Const., Art. II, § 34a.

7

### 6.1.2. "Dual Jobs" Claim

Plaintiff contends that he worked in both a tipped and non-tipped capacity. Specifically, Plaintiff was paid $7.00 per hour for all hours worked. In other words, for some of his work time, he worked on the road delivering food and earning tips. For the remaining portion of his work time, he worked inside the store, not generating tips. To the extent that Plaintiff worked in two occupations (i.e., "dual jobs"), he is entitled to be paid at full minimum wage for any non-tipped work. 29 C.F.R. 531.56(e). Defendants, however, contend that Plaintiff's in-store work was so related to his tipped work as to be part of the same occupation, thus entitling Defendants to pay a tipped wage rate for all of the work. If it were proven, the unpaid wages for this claim range from approximately $15,000 to $50,000 depending on how much time the drivers spent inside the store. From there, Plaintiff sought the application of FLSA and Ohio Constitution damages.

### 6.1.3. Overtime Claim

Plaintiff alleged that delivery drivers were sometimes paid their regular hourly rate for overtime hours because they worked at two different Jimmy John's locations for more than 40 total hours, but were paid on separate paychecks. As a result, some weeks where class members exceeded 40 hours of work, they were not paid time-and-a-half for their overtime hours. If Plaintiff prevailed on this claim, Plaintiff estimates the total unpaid wages for the class were approximately $20,000, before the application of FLSA liquidated damages.

### 6.1.4. Prompt Pay Act Claim

Plaintiff also asserts a claim under Ohio's Prompt Pay Act, R.C. § 4113.15. This claim has essentially two components—unpaid wages and liquidated damages.

The unpaid wages portion can "rise and fall" with an underlying wage violation (*i.e.*, like an FLSA violation). *See, e.g., Parks v. Cent. USA Wireless, LLC*, No. 1:17-cv-448, 2019 WL 4743648, *5 (S.D. Ohio Sept. 29, 2019). Because the damages for this claim mirror the unpaid wages for the above violations, the analysis is the same.

The liquidated damages portion, however, is only available when there is no dispute as to the underlying wages. R.C. § 4113.15(B). Here, Defendants contend that there is a dispute over whether wages are due. Plaintiff contends that, particularly for the period when Defendants did not reimbursement anything, there was no dispute that the wages were due. If Plaintiff prevailed on the claim, the class could have been awarded up to an additional $2,000,000. Alternatively, if the Court determined the wages owed were disputed, Defendants' liability would be $0.

### 6.1.5. The Settlement achieved is excellent.

The Settlement represents approximately 200% of the Class's unpaid wages on the primary mileage under-reimbursement claim, or around 175% of the Class's unpaid wages including the dual jobs claims. Under any metric, this percentage of recovery is excellent. *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding settlement of 10% of the total amount sought is adequate due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, No. 15-cv-02198, 2016 WL 5907869, **7-8 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, *8 (N.D. Ohio Mar. 8, 2010) (finding recovery of one-third of owed wages for class members, before deducting attorney's fees and costs, is "well-above average.").

### 6.2. Other Considerations

In his Motion for Preliminary Settlement Approval, Plaintiff addressed the other factors that courts in the Sixth Circuit review in evaluating settlements: (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceedings and amount of discovery completed; (3) the judgment of experienced trial counsel; (4) the nature of the negotiations; (5) any objections from class members; (6) the objections, if any, raised by class members; and (7) the public interest. *See Brandenburg II,* 2019 WL 6310376, at *2. Plaintiff explained in detail how these considerations support settling this case. *See* Doc. 53, § 5.5. A final factor, the objections of class members, can now be considered. No Class Members objected to the Settlement Agreement, so this factor also supports granting final approval of the settlement. Because all seven factors favor approval, the Court should grant final approval.

### 7. Certification of Settlement Class is appropriate.

Plaintiff explained why Rule 23 class and FLSA collective certification are appropriate in his Motion for Preliminary Approval and incorporates those arguments herein. *See* Doc. 53, § 6. Defendants consent to class/collective action certification for settlement purposes. *See* Doc. 53, § 6. In its Order Granting Preliminary Approval, the Court certified the Rule 23 class and the FLSA collective action classes. Doc. 54, ¶¶ 2–3. Plaintiff incorporates his arguments from the Motion for Preliminary Approval for why certification of a Rule 23 Settlement Class is appropriate. *See* Doc. 53 at PAGE ID 442-450.

### 8. The payment of attorney's fees and costs is reasonable.

In its Order Granting Preliminary Approval, the Court provisionally approved Plaintiff's Counsel's request for attorney's fees and costs. Doc. 54, ¶ 9. The Court explained that the "fees

10

and costs will be approved after the final hearing occurs, taking into account any objections." *Id*. There have been no objections.

Class Counsel applies for one-third of the settlement fund as attorneys' fees ($333,333.00). An award of one-third "is a normal fee amount in a wage and hour case." *Brandenburg II*, 2019 WL 6310376, at *5; *see also, e.g.*, *Osman v. Grube, Inc.*, No. 3:16-cv-802, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018)( "One-third of the common fund is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'"); *Carr v. Bob Evans Farms, Inc.*, No. 1:17-cv-1875, 2018 WL 7508650, *4 (N.D. Ohio July 27, 2018) ("In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund.").[1]

Accordingly, Class Counsel request one-third of the Settlement in the amount of $333,333.00 in attorneys' fees. Class Counsel also requests $15,437.24 in reasonable litigation costs. Ex. 2 at ¶ 24. These costs include the filing fee, copying costs, notice costs, and postage.

---

[1] *See, e.g.*, *In re Foundry Resins Antitrust Litig.,* No. 04-md-01639, Doc. 245 (S.D. Ohio Mar. 31, 2008) (order awarding a fee of 33 1/3% of a $14.1 million dollar settlement); *In re Packaged Ice Antitrust Litig.*, Case No. No. 08-MDL-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) ("Importantly, the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions.") (Internal citations omitted); *In re Skelaxin Antitrust Litig.*, Case No. 2:12-cv-83, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) (finding "the requested counsel fee of one third is fair and reasonable and fully justified."); *Thacker v. Chesapeake Appalachia*, LLC, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010) ("Using the percentage approach, courts in this jurisdiction and beyond have regularly determined that 30% fee awards are reasonable."); *Kimmel v. Venture Construction Co.*, Case No. 1:10-cv-01388-RLV (N.D. Ga. 2010) (Dkt. 70) (approving 30% of common fund as attorneys' fees and costs); *Moultry v. Cemex, Inc.*, Case No. 8:07-cv-00453- MSS, Dkt. 145 (M.D. Fla. 2008) (awarding 32.25% of common fund as attorneys' fees); *Kemper v. Rent-A-Center, Inc.,* Case No. 4:00-cv-00435-RH-WCS, Docs. 14-15 (N.D. Fla. 2000) (awarding 33.33% of common fund approach to plaintiffs' counsel). In *In re AremisSoft Sec. Litig.*, 210 F.R.D. 109, 134 (D.N.J. 2002), the court stated that "[s]cores of cases exist where fees were awarded in the one-third to one-half of the settlement fund." *See, e.g.*, *Erie County Retirees Ass'n v. County of Erie*, 192 F. Supp. 2d 369, 382-83 (38% of common fund was awarded in ADEA case); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 179-80 (W.D.N.Y. 2005) (almost 40% of $125,000 common fund awarded in a FLSA case); *Gilliam v. Addicts Rehab. Ctr. Fund*, Case No. 05 Civ. 3452(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (finding it reasonable to award class counsel a fee of one-third of the common fund).

9. **The incentive payment to Plaintiff should be approved.**

In its order granting provisional approval, the Court "approved the service award, absent any objections at the Final Fairness hearing." Doc. 54, ¶ 10. The settlement agreement earmarks funds from the settlement amount to compensate Plaintiff: $10,000. This amount is in line with identical amounts awarded in nearly identical cases. *See Arledge v. Domino's Pizza*, No. 3:16-cv-386, 2018 WL 5023950,*6 (S.D. Ohio Oct. 17, 2018); *Mullins v. Southern Ohio Pizza*, No. 1:17-cv-146, 2019 WL 275711, *6 (S.D. Ohio Jan. 18, 2019); *Brandenburg II*, 2019 WL 6310376, at **7-8; *Casteel v. Antonio's Pizza, Inc.*, No. 1:18-cv-1277, Doc. 52 (N.D. Ohio May 17, 2019). Plaintiff spent time and effort working with his counsel on this case. As in any case, Plaintiff bore risk in proceeding with the case, including financial and reputational risk. Without Plaintiff's participation, this class settlement would not have occurred. Plaintiff asks the Court to approve the service fee award to Plaintiff.

10. **Conclusion**

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his motion for Motion for Final Settlement Approval and for an Award of Attorney's Fees and Expenses and enter the Proposed Order.

Respectfully submitted,

/s/ Phil Krzeski
Andrew R. Biller (Ohio Bar #0081452)
BILLER & KIMBLE, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620

12

abiller@billerkimble.com

Andrew P. Kimble (Ohio Bar #009372)
Philip J. Krzeski (Ohio Bar #0095713)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
akimble@billerkimble.com
pkrzeski@billerkimble.com
www.billerkimble.com

*Counsel for Plaintiff and the collective/class*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 21st day of October 2020. I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Defendants.

                /s/Phil Krzeski
                Philip J. Krzeski