In the United States District Court
for the Southern District of Ohio
Western Division at Dayton

| | |
|---|---|
| Ray Arp, | |
| *On behalf of himself and those similarly situated*, | Case No. 3:18-cv-119 |
| Plaintiff, | Judge Walter H. Rice |
| v. | |
| Hohla & Wyss Enterprises, LLC, | |
| Defendants. | |

Order and Decision Granting
Plaintiff's Motion for Final Settlement Approval

Before the Court is Plaintiff's Motion for Final Approval (Doc. 55) of a settlement on behalf of members of an FLSA collective action and Rule 23 class action. On October 26, 2020, the Court held a Final Fairness Hearing on this matter. Plaintiff's Motion is now ripe for adjudication.

## I. Background

This is a wage and hour lawsuit brought on behalf of a class of delivery drivers at approximately seven Jimmy John's franchise locations in the Dayton area. Plaintiff is one of those drivers. Plaintiff raises a number of claims under the Fair Labor Standards Act and Ohio's wage and hour laws. Those claims are discussed below.

### A. Under-reimbursement of Vehicle Expenses

Plaintiff and other drivers delivered food for Defendants' restaurant operation and used their own cars to do so. Plaintiff contends that Defendants under-reimbursed the drivers for the expenses that the drivers incurred in having to use their own vehicles.

It is well-established that employers must reimburse employees for expenses that they incur when an employee provides "tools of the trade" used in the employee's work. *See* 29 C.F.R. 531.35. Likewise, there is little dispute that a car is a delivery driver's "tool of the trade." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 WL 5800594, at *4 (S.D. Ohio Nov. 6, 2018) ("*Brandenburg I*").

Neither 29 C.F.R. § 531.35, nor any other regulation sets forth "a methodology for calculating mileage rates, or provide any other guidance as to how to determine or put a value on the expenses related to operating an automobile for work." *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 WL 5725043, at *4 (S.D. Ohio Nov. 5, 2019), *motion to certify appeal denied*, 2019 WL 7421952 (S.D. Ohio Dec. 23, 2019). In order to resolve this ambiguity, courts should look to agency guidance. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2412, 204 L. Ed. 2d 841 (2019). Here, the Department of Labor's Field Operations Handbook gives employers two options: track and pay each driver's actual expenses or reimburse each driver at the IRS business mileage rate. *Hatmaker*, 2019 WL 5725043, at *7. Courts in this district defer to the Handbook to resolve the regulatory ambiguity on this issue. *Id.* The same standard applies to Ohio's minimum wage law (Article II, Section 34a of the Ohio Constitution). *Brandenburg I*, 2018 WL 5800594, at *4.

In this case, Plaintiff alleges that, across the class, the under-reimbursed amount is approximately $500,000 during the relevant time period. Defendants raise a number of defenses to Plaintiff's claims, including Plaintiff's calculations of the miles driven and amounts owed.

**B. "Dual Jobs"**

2

Plaintiff claims that he and other class members worked "dual jobs." "Dual jobs" is a wage and hour term of art that addresses situations where an employee works part of his or her time in a tipped capacity and part in a non-tipped capacity. *See* 29 C.F.R. 531.56. When an employee is, in fact, employed in "two occupations," then "no tip credit can be taken for his hours of employment" in a non-tipped occupation. *Id.*

Here, there is no dispute Defendants paid the delivery drivers the same, tipped wage rate for their work hours both inside the store and on-the-road making deliveries. Plaintiff contends that his in-store work was not related to tipped, on-the-road work. Thus, Plaintiff argues, his in-store work should have been paid at full minimum wage. Defendants, on the other hand, argue that Plaintiff's in-store work was so related to his on-the-road work as to be part of the same, tipped occupation.

Plaintiff estimates that the class-wide unpaid wages for the "dual jobs" claim ranges between $15,000 and $50,000. Defendants dispute both liability and this estimate.

### C.  Unpaid Overtime

Plaintiff claims that Defendants paid him and other delivery drivers at their regular hourly rate when they worked at two different locations that Defendants owned or operated. Plaintiff alleges that the two different locations were "joint employers."

The "joint employer" concept under the FLSA and Ohio law recognizes that two employers "may be so interconnected that they function as a single, joint employer." *New York v. Scalia*, No. 1:20-cv-1689, 2020 WL 2857207, at *2 (S.D.N.Y. June 1, 2020) (discussing the concept under the FLSA). Work done for joint employers must be aggregated for purposes of calculating overtime hours worked. *Id.* at *3.

3

Employment under the FLSA is a far broader concept than the common law definition of employment. *New York v. Scalia*, 1:20-cv-1689, 2020 WL 5370871, at *26 (S.D.N.Y. Sept. 8, 2020) (providing a comprehensive examination of joint employment under the FLSA). Accordingly, determining whether someone is an employer, whether joint or individual, "depends on all the facts in the particular case." *Pineda v. Pit Columbus, LLC*, 2017 WL 5900559, at *2 (S.D. Ohio Nov. 28, 2017), *quoting Keeton v. Time Warner Cable*, 2010 WL 2076813, at *2 (S.D. Ohio, May 24, 2010).

Here, the parties dispute the underlying facts of the delivery drivers' employment relationship with the various restaurants at issue. As a result, this claim would have been time-consuming and expensive to adjudicate. Plaintiff estimates the total unpaid wages at issue to be approximately $20,000.

### D. Ohio Prompt Pay Act

Finally, Plaintiff alleges that, as a result of the above claims, Defendants necessarily violated Ohio's Prompt Pay Act, O.R.C. § 4113.15. Plaintiffs are correct that an underlying wage and hour violation can give rise to a Prompt Pay Act claim. *See, e.g., Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385, n.1 (6th Cir. 2016).

Of relevance here, the Prompt Pay Act allows employees to sue for two measures of damages. First, the employee may sue for any wages due under another law but not timely paid under the Prompt Pay Act. *Id.* Second, the employee may sue for liquidated damages arising from any wages "not in contest or disputed" but still unpaid. O.R.C. 4113.15(B).

The parties do not dispute that, whether under the FLSA, Prompt Pay Act, or the Ohio Minimum Fair Wage Standards Act, employees may only recover their unpaid wages once, even if entitlement to those wages arises under multiple laws. The parties do dispute, however,

whether any of the allegedly unpaid wages in this case are "not in contest or disputed." Thus, had the case proceeded, the Court would need to adjudicate whether any or all of the claims at issue could give rise to liquidated damages under the Prompt Pay Act.

## II.     The Settlement Agreement

The Settlement Agreement obligates Defendants to pay a total of $1,000,000. After deducting amounts allocated to fees, expenses, and a service award, the remaining funds will be distributed to class members as follows: first, each opt-in plaintiff will receive $200; second, $10,000 will be allocated to any class member with an alleged joint employment/overtime claim (described above), third, the remaining amount will be distributed based on the miles each class member drove for Defendants. The settlement money will be distributed in three payments, with the final payment being made less than one year from today. Under the terms of the settlement, class members who do not cash their settlement checks for any reason (for example, if they do not initially receive it) will have nearly three years to request a replacement check. Agreement, §3(F).

Before delving into the factors relevant to settlement approval, the Court notes that the proposed plan of distribution is appropriate.

First, the Court finds that dividing most of the settlement funds among the class members based on their miles driven will allocate money in a way that fairly accounts for each person's claim; *i.e.*, those with the most alleged damages will receive the most money and vice versa. This is a fair and reasonable way to distribute the money. The same considerations apply with respect to the money allocated to the joint employment/overtime claim.

Second, allocating an additional sum to the opt-in plaintiffs is appropriate in this case. The Court agrees that those individuals may have superior claims because they have proactively

asserted their FLSA claims and effectively tolled the statute of limitations on those claims whereas the absent class members have not. Thus, it is fair and reasonable to allocate an additional amount to those individuals.

Third, the Court finds that the distribution timing of three payments, all to be paid within a year, is appropriate in this case. At the Final Fairness Hearing, counsel for both parties spoke in favor of this arrangement and that Defendants' finances warranted this concession on behalf of the class. The Court agrees with counsel that this is a fair and reasonable timeframe for distribution, given the facts of this case.

In exchange for the settlement payments, Plaintiff and the class members who cash or otherwise negotiates his or her check, release "all wage and hour claims asserted in the Lawsuit and that accrued during the Class period, including claims related to the under-reimbursement of delivery expenses, 'dual jobs' claims, and unpaid overtime claims, including any related claims for liquidated damages, penalties, attorneys' fees and costs, and interest, that could be pursued under the Fair Labor Standards Act, whether known or unknown, and any and all derivative claims relating to unpaid wages or minimum wage compensation against the Defendants or Released Parties arising from the facts and claims asserted in this Lawsuit." Agreement, ¶¶ 5(B) and (C). All class members also release their equivalent Ohio law claims, regardless of whether they cash their settlement check.

The Court finds that these releases are appropriately narrowed to the claims raised in the lawsuit. The Court is mindful that, because of the remedial nature of wage and hour laws, it is important that releases not exceed the scope of the claims raised in the lawsuit or those claims arising from the same facts alleged in the lawsuit. This release meets that requirement.

III.    **Analysis**

### a. Standard to approve an FLSA and Class Action Settlement

Before a court approves a settlement, the Court must find that the settlement is fair, reasonable, and adequate. *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *2 (S.D. Ohio Nov. 25, 2019) ("*Brandenburg II*"). Courts examine seven factors when considering settlements: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Id.* This Court has also considered whether the notice process was adequate, and will do so here as well. *Id.*

### i. The Notice Process

Prior to sending notice in this case, this Court approved the form of notice. Doc. 54. Thus, the question at this stage is whether the notice process was appropriate, taking into account the results of the notice.

Here, Plaintiff, through a third party administrator, sent notice to approximately 621 class members. Notice was sent by regular mail and, to the extent email addresses were available, by email. To the extent that mail was returned as undeliverable, the administrator was instructed to run those names through a change of address database and resend the notice if possible.

The Court finds that notice by both regular mail and email is appropriate in wage and hour cases. This method helps ensure that employees, many of whom may move sometime after leaving their employment, receive notice of a lawsuit. "Electronic mail is an inexpensive, non-invasive, effective way to ensure that notice is received in a timely manner. Further, given the three-year lookback period for Plaintiffs' FLSA claims, it is likely that at least some of the

7

electronic and postal mail addresses that Defendants possess for their current and former delivery drivers is outdated." *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2017 WL 3500411, at *5 (S.D. Ohio Aug. 15, 2017).

During the Fairness Hearing, the Court questioned Class Counsel regarding the outcome of the notice process. Class Counsel represented that less than 5% of the notices were returned as undeliverable and some measure of those notices may have been delivered through either email or the administrator's efforts to find updated addresses.

The Court finds that the notice process was appropriate in this case. The Court further finds that an undeliverable rate of less than 5% is a good result and further supports the Court's holding that notice was adequate in this case.

### ii.  The Risk of Fraud or Collusion

The records before the Court reflects that this settlement was the product of arms-length negotiations conducted by experienced counsel on both sides. This factor weighs in favor of approval.

### iii.  The Complexity, Expense, and Likely Duration

Wage and hour class and collective actions, such as this, are inherently complex and time-consuming. *Brandenburg II*, 2019 WL 6310376, at *3. This case was no exception.

Even aside from the legal issues present in the case, the factual issues in this case added to its complexity and likely duration. In particular, as discussed at the Fairness Hearing, this case involved an expert's analysis of Defendants' mileage records, which were relevant to the under-reimbursement claim. Based on that discussion, it is clear to the Court that the parties would likely have to litigate over what was contained in the records. Moreover, Plaintiff's dual jobs and overtime claims involved disputed issues of fact that would increase the cost of this litigation.

The Court finds that, given the complexity, expense, and likely duration of this lawsuit, a settlement at this time benefits the parties and weighs in favor of approving the settlement.

### iv.  The Amount of Discovery Engaged in by the Parties

In under-reimbursement delivery driver cases, discovery focuses "mainly on the records Defendants are required to keep under the FLSA and Ohio law." *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2020 WL 1129325, at *3 (S.D. Ohio Mar. 6, 2020). Here, the parties engaged in a review of Defendants' mileage and pay records, the key pieces of evidence in an under-reimbursement case. *Id.* ("An employer's own records will answer the question of whether the employer complied with minimum wage laws.") As previously discussed, Plaintiff also employed an expert to analyze the records. The Court is satisfied that both parties were fully informed as to the strengths and weaknesses of their respective positions and that settlement is appropriate in that situation.

### v.  The Opinions of Class Counsel and Class Representatives

Plaintiff was present at the hearing and approved of the Settlement Agreement. His counsel spoke in favor of the settlement and represented that this was an excellent result for the class. Class counsel's judgment is entitled to "significant weight" and, in this case, supports approving the settlement. *See Brandenburg II*, 2019 WL 6310376, at *4.

### vi.  The Reaction of Absent Class Members

No class member objected or excluded him or herself from the settlement prior to the Fairness Hearing. At the Hearing, no class member attended the Hearing to object to the Settlement. Moreover, Class Counsel represented that their law clerk was present at the courthouse in case a class member attempted to attend in-person. According to Class Counsel, no

one attempted to attend the hearing in-person. The lack of objections/exclusions supports approval.

### vii.   The Public Interest

The public interest favors the settlement of class action lawsuits. This is especially true in the cases involving wage and hour claims, which, by their very nature implicate the public interest. When a settlement is otherwise fair and reasonable, the public interest is advanced by the settlement. Here, the settlement provides relief to the class members, avoids further litigation in a complex case, and frees judicial resources. Accordingly, this factor favors approving the settlement.

### viii.   The Overall Settlement Terms

The Court must, of course, consider the settlement's overall terms and the class relief obtained. Here, the primary claim involved under-reimbursed vehicle-related expenses that resulted in, according to Plaintiff, approximately $500,000 in unpaid wages. Even after the proposed fee, expense, and service awards (discussed below), the class will receive more than this amount. In other words, the class will receive their full, alleged unpaid wages and some measure of additional damages.

It is noteworthy that Defendants dispute the alleged amount of unpaid wages on a number of legal and factual grounds. Importantly, Defendants dispute the very calculation and interpretation of the records resulting in Plaintiff's estimate of unpaid wages. Thus, if Defendants calculations were to prevail, the amount of unpaid wages, even putting Defendants' legal and factual challenges aside, could be lower.

The Court also notes that the parties worked together to craft a solution that is financially viable for Defendants and resolves the claims against Defendants. At the same time, the structure allows class members to receive their payments in a relatively timely manner.

The Court appreciates both parties' counsels' hard work in putting together a settlement that is a good result for the class and appropriately accounts for the risk of going forward with the litigation. The Court **GRANTS** Plaintiff's Unopposed Motion for Final Settlement Approval.

### b. Fees, Expenses, and Service Awards

#### i. Plaintiff's Counsel's Fees

Class Counsel asks the Court to approve an attorney's fees award of one-third of the settlement fund, *i.e.*, $333,000. Defendants do not object to the requested fee award.

District courts may award reasonable attorneys' fees and expenses from the settlement of a class action under Rules 54(d)(2) and 23(h). *See Lowther v. AK Steel Corp.*, 2012 WL 6676131, at *1 (S.D. Ohio Dec. 21, 2012). When assessing the reasonableness of a fee petition, district courts engage in a two-part analysis. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 760 (S.D. Ohio 2007). First, the district court determines the method for calculating fees: either the percentage of the fund approach or the lodestar approach. *Id.* (citation omitted). Second, the court must analyze the six factors set forth by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). *Id.*

#### 1. The Court adopts the percentage approach.

In the Sixth Circuit, district courts may award fees based on either the "percentage-of-the-fund" or "lodestar." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 761. This flexible approach allows the Court to account for the unique and varied circumstances present in each class action. The "percentage approach is 'the most appropriate method for determining

reasonable attorneys' fees' in wage and hour cases." *Herbert v. Chesapeake Operating, Inc.*, 2019 WL 4574509, at \*4 (S.D. Ohio Sept. 20, 2019), *quoting Swigart v. Fifth Third Bank*, 2014, WL 3447947, at \*5 – 6 (S.D. Ohio July 11, 2014). The Court will use the preferred method in this district and award a percentage-of-the-fund.

Here, Class Counsel requests an award of one-third of the settlement fund as a fee award. This is a normal fee amount in a wage and hour case. "In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund." *Carr v. Bob Evans Farms, Inc.*, No. 1:17-cv-1875, 2018 WL 7508650, at \*4 (N.D. Ohio July 27, 2018) There is no reason in this case to deviate from the norm.

## 2. The *Ramey* Factors

In reviewing the reasonableness of the requested fee award, courts consider six factors, known as the *Ramey* factors: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386, 2018 WL 5023950, at \*4 (S.D. Ohio Oct. 17, 2018). There is not a formula for weighing the factors. *See NorCal Tea Party Patriots v. Internal Revenue Serv.*, No. 1:13-cv-341, 2018 WL 3957364, at \*1 (S.D. Ohio Aug. 17, 2018). Moreover, "the Court should be mindful that each case presents a unique set of circumstances and arrives at a unique settlement, and thus different factors could predominate depending on the case." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 764. Here, each of these factors weighs in favor of granting the requested fee.

First, Class Counsel's work resulted in significant benefit to class members whereby each class member will receive over 100% of their alleged unpaid wages, even after the proposed fee award. To receive this money, class members do not need to take any action other than cash a check that will be mailed to them. The Court finds that this is an excellent result that supports the proposed fee award.

Second, the Court finds that there is a benefit to society in ensuring that claimants with smaller claims may pool their claims and resources. The attorneys who take on class action cases enable this. *See Moore v. Aerotek, Inc.*, Case No. 2:15-cv-2701, 2017 WL 2838148, at *8 (S.D. Ohio June 30, 2017) (citation omitted). The societal benefit is particularly acute in wage and hour cases brought on behalf of minimum workers. In order for attorneys to take on these cases, which, in the class and collective action setting, are complex and difficult cases, attorneys must be fully compensated for their work. Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own. *Id.* (citation omitted).

Third, Class Counsel litigated this matter on a wholly-contingent basis with no guarantee of recovery. *See* Biller Dec, Doc. 55-2, ¶ 19. This supports the proposed fee award.

Fourth, a lodestar cross-check, while not required, also supports Plaintiff's counsels' fee request. *Mitchell v. Indep. Home Care, Inc.*, No. 2:17-cv-717, 2019 WL 696941, at *7 (S.D. Ohio Feb. 20, 2019), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019). Under the lodestar calculation, the Court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate.

At least as of the time of Class Counsel's fee submission, Class Counsel had spent approximately 140 hours on this case. In a similar case involving the same Class Counsel, the

Court approved of the same attorney rates used in this case ($600 for Andrew Biller, $550 for Andrew Kimble, $350 for Philip Krzeski). *See Brandenburg II*, 2019 WL 6310376, at *6 (noting counsels' expertise in this specific area of law). Counsel also used a rate of $100 to $150 for support staff and law clerk time. This too is reasonable. In total, Class Counsel's lodestar is appropriately $62,416, at an average hourly rate of $445. Given this case's size, complexity, and difficulty, the Court finds that the hours expended, total lodestar, and average hourly rate are all reasonable.

The Court is aware that Class Counsel's work does not end at final approval. Class Counsel frequently spend additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters.

The multiplier on Class Counsel's lodestar is approximately 5.29 before accounting for any additional work. This is within the acceptable range. *See Lowther v. AK Steel Corp.*, No. 1:11-cv-877,2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a 3.06 multiplier and citing cases that found multipliers ranging from 4.3 to 8.5 to be reasonable).

District courts have broad discretion when it comes to awarding a reasonable fee and when weighing the *Ramey* factors. This case presents an example of why this discretion is important: the lodestar in this case does not tell the whole story.

What the lodestar in this case does not reflect is Class Counsel's work in other delivery driver cases that directly benefited the class in this case. Here, the Court is quite familiar with "pizza delivery driver litigation." *See Brandenburg II*, 2019 WL 6310376, at *6. Although this case involves delivery drivers at a sandwich restaurant rather than a pizza restaurant, the claims are the same. In another wage and hour delivery driver case involving substantially similar issues, a court in this district held that Biller & Kimble "established an expertise in 'pizza

14

delivery driver' litigation, having expended thousands of hours on similar cases which informed and enhanced their representation of Plaintiff here." *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 275711, at *5 (S.D. Ohio Jan. 18, 2019); *see also See Brandenburg II*, 2019 WL 6310376, at *6 (discussing Biller & Kimble's expertise in this area). A firm's expertise in a niche area provides important context when analyzing the reasonableness of a fees. For example, Class Counsel's success on a specific type of case or specific issue augments their ability to obtain a favorable result in cases of the same type.

It would be inequitable for a court to reduce a fee award based on a lodestar cross-check without considering a law firm's work other cases raising the same or similar issues. That work may, as it did here, substantially enhance the result Class Counsel is able to achieve. This is true for several reasons, including that (1) successfully litigating a particular issue may improve the settlement prospects of cases raising the same issue, (2) developing expertise in a specific niche improves the firm's ability to effectively litigate within that niche, and (3) the work product from one case can be used in a case raising the same issue, resulting in value that is not adequately reflected in a lodestar calculation.

These factors weigh in favor of and confirm the appropriateness of what courts in this district already do: base common fund fee awards in wage and hour cases on a percentage-of-the-fund.[1] In most cases, the percentage-of-the-fund approach automatically factors into the award any enhancement to the settlement derived from Class Counsel's work in similar cases. The "percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class." *In re Cardinal Health Inc. Sec. Litigations*, 528 F. Supp. 2d at 762.

---

[1] Obviously, this applies to common funds created in class and collective actions like this case. The considerations are different when awarding fees pursuant to the FLSA's fee-shifting provision. In those situations, counsel's lodestar represents a presumptively reasonable fee.

Thus, as this Court previously held, a lodestar cross-check is not required. *See Brandenburg II*, 2019 WL 6310376, at \*6. In cases that involve the issues described above, a lodestar cross-check, if applied at all, should be afforded little weight. In any case, the cross-check results in an acceptable multiplier of 5.29.

Fifth, as noted above, this was a complex wage and hour class/collective action. The Court finds that this factor weighs in favor of approving the fee.

Sixth, and finally, Plaintiff and Defendants are represented by experienced counsel. All counsel are highly qualified and have substantial experience in federal courts and class action litigation. Class Counsel has substantial experience in wage-and-hour litigation and "delivery driver litigation" in particular. *Mullins*, 2019 WL 275711, at \*5. Defendants' lead counsel, Timothy Pepper, is an experienced litigator, and an OSBA certified specialist in labor and employment law. Counsels' professional skill and standing support approving the fee.

For these reasons, the Court determines the fees requested are reasonable, and **GRANTS** Class Counsel's request for fees in the amount of $333,000.

### ii. Reimbursement of Expenses

Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of the claims and in obtaining a settlement. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003). Here, Class Counsel requests reimbursement of $15,437.24. As explained in Plaintiff's briefing and at the Fairness Hearing, the bulk of this was from (1) expert data analysis that Plaintiff used to evaluate the claims, (2) the notice process, and (3) investigation related to Defendants' finances.

16

The Court finds these expenses to be reasonable and necessary in connection with litigating and resolving this case. Defendants do not dispute that the fees are reasonable and reimbursable. The Court **GRANTS** Class Counsel's request for expense reimbursement in the amount of $15,437.24.

### iii. Class Representative Contribution Award

Plaintiff requests a service award of $10,000, which Defendants do not oppose. At the outset, the Court notes that a service award of $10,000 has been approved in nearly identical cases. *See Brandenburg II*, 2019 WL 6310376, at *8; *Arledge*, 2018 WL 5023950 at *6; *Mullins*, 2019 WL 275711 at *6; *Casteel v. Antonio's Pizza, Inc.*, No. 1:18-cv-1277, at Doc. 52 (N.D. Ohio May 17, 2019).

The Supreme Court recently recognized that a class representative "might receive a share of class recovery above and beyond her individual claim." *China Agritech, Inc. v. Resh*, —— U.S. ——, 138 S. Ct. 1800, 1811, n.7, 201 L.Ed.2d 123 (2018). It is important to compensate the work and additional risk that a class representative takes on, particularly in a wage and hour lawsuit.

As Class Counsel advocated at the Fairness Hearing, important rights, including those implicated by wage and hour laws, would go without vindication but for the efforts of individuals like Plaintiff. Workers who take on the role of a class representative assume risk on behalf of their fellow workers, including the risk that a prospective employer may be hesitant to hire an employee who sued a past employer. Because federal court filings are publicly accessible, this risk should be neither understated nor under-compensated.

The Court finds that Plaintiff contributed his efforts to the lawsuit and only through Plaintiff's efforts did a large group of low-wage workers receive a substantial award. Plaintiff's

17

efforts furthered the important public policies underlying the Fair Labor Standards Act and Ohio's wage laws. The Court finds that it is appropriate to reward wage and hour plaintiffs who obtain tangible benefits for their fellow workers.

Accordingly, the Court **GRANTS** Plaintiff's request for a service award of $10,000.

## IV.    Conclusion

Based upon the foregoing, Plaintiff's unopposed motion for final settlement approval is **GRANTED**.

The parties shall notify the Court once the final settlement payment is made, at which time the Court will dismiss this action with prejudice, without costs to any of the parties against the others. Without affecting the finality of this Judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of this Judgment and the Settlement Agreement, and all matters ancillary thereto.

IT IS SO ORDERED, this ___5th___ day of ___November___, 2020.

Walter H. Rice, United States District Judge

18